CHIEF JUSTICE SIMPSON
delivered the opinion oa? the court:
On the 3d day of February, 1858, A. C. Terrill mortgaged to his father, 0. Terrill, some personal property, for the purpose, as recited in the mortgage, of indemnifying the mortgagee as the security of the mortgagor, on a note to Merrill and Johnston for the sum of $74 52, executed at the same time, and also as his security to Benjamin Schooler for the rent of about thirty-four and one half acres of land, due the first of January, 1858; and also for ,the purpose of securing the payment of a debt of four hundred and five dollars and forty cents, which he owed to the mortgagee, and which was evidenced by note of the same date.
*453 On the 5th day of the sáme month this action was brought by the appellees, who alleged in their petition that they were the securities of the mortgagor for a debt which was due and unpaid, upon which suit had been brought, and judgment would be obtained against them at the approaching term of the circuit court. They also alleged that the mortgagor, A. C. Terrill, in contemplation of insolvency, and with the view and design of preferring his father, Overton Terrill, to the exclusion of his other creditors, and also for the purpose of hindering, delaying, and defrauding his j ust creditors in the collection of their debts, had executed the mortgage referred to. They also charged that if the mortgage was accepted by the mortgagee it was not done for the purpose of securing debts or liabilities created simultaneously with its execution, but for the purpose of defrauding the creditors of the mortgagor.
The defendant, Overton Terrill, in his answer to the petition, denied positively that the mortgage was made in contemplation of insolvency, denied the fraudulent intent charged in the petition, and alleged that the mortgage was executed for the purposes therein stated, “ which purposes were all just, fair, and legal, and the facts therein recited were all true; that his responsibility in the note to Merrill and Johnston, and his co-defendant’s responsibility in a note of four hundred and five dollars and fifty cents, payable to him, were simultaneous with the execution of the mortgage; the liability to Schooler recited in the mortgage existed prior to its date, but he insisted that the mortgage, even as respects the latter liability, was valid, because it was entered into bona fide, and for no improper purpose, and not in contemplation of insolvency.”
The court below decided that the mortgage was executed in contemplation of the insolvency of the mortgagor, and for the purpose of preferring the mortgagee, to the exclusion of other creditors, and operated under the statute as a general assignment to the creditors of the mortgagor. From that judgment the mortgagee has appealed.
The first objection made to the judgment is, that the plaintiffs’ liability as sureties for the mortgagor is denied by the mortgagee in his answer, and it is not proved. With respect to this *454 objection it is only necessary to remark, that the answer is insufficient to put the plaintiffs on the proof of this allegation in their petition. The defendant merely says that he knows nothing on the subject of his own knowledge; but does not state, as required by the Civil Code, that he has no knowledge or information therof on which he can found a belief.
On the question of the validity and legal effect of the mortgage, it is contended, on the one side, that every mortgage operates, prima facie, under the statute to prevent fraudulent conveyances passed in 1858, as a general assignment in favor of all the creditors of the mortgagor; that the provision in favor of a certain description of creditors is an exception to the general policy of the act, and that no mortgage ¡is valid unless the mortgagee can bring himself within the exception.
On the other side it is contended, that no mortgage which is made in good faith, and not in contemplation of insolvency, is prohibited by the statute; and that even if it be made in contemplation of insolvency, yet if it be done in good faith, and without any actual fraudulent intent, to secure a debt or liability created simultaneously with the execution of the mortgage, the ■exception in the statute would render it valid.
The section in the statute of 1856, (Session Acts, 1855-6, page 107,) on the construction of which the solution of these questions depends, is in the following language, viz:
“Sec. 1. That every sale, mortgage, or assignment, which shall be made by debtors in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors, except as hereinafter provided, in proportion to the amount of their respective demands, including those which are future and contingent; ■but nothing in this section shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, and lodged for record within thirty days after its execution.”
If, as contended on behalf of the plaintiffs in the action, every mortgage which may be executed will, under the pro *455 visions of tbis statute, operate prima facie as a general assignment and transfer of all tbe property and eifects of the debtor for the benefit of all his creditors, then no mortgage will be valid unless it is embraced by the exception in the foregoing section; and it was not incumbent upon the plaintiffs in this case to prove that the mortgage was made in contemplation of insolvency, but it devolved upon the mortgagee to show that it was made in good faith, to secure debts and liabilities which were created simultaneously with it.
The statute, however, is not susceptible of this construction. A mortgage which is not made in contemplation of insolvency is valid. It is not prohibited by the statute, although it may make a preference among existing creditors. A mortgage, unless it be made in contemplation of insolvency, and also with the design to prefer one or more creditors to the exclusion of others, is not embraced by the statute.
If the construction contended for were given to the statute, the consequence would be that a mortgage made to secure any pre-existing liability, would operate as a general transfer of all the mortgagor’s propei'ty and effects to his creditors, although his estate might exceed in value ten times the amount of all his debts and liabilities. Such was not the intention of the legislature in the enactment of the statute under consideration. The object the legislature had in view was to prevent an insolvent debtor from making preferences among his creditors. The act was drawn to accomplish that object, and should be liberally construed for the purpose of effectuating that intention. But it cannot be extended to cases which are not embraced either by its language or spirit. Unless, therefore, the mortgage in question was made in contemplation of insolvency, or for the purpose of defrauding the creditors of the mortgagor, it cannot be deemed invalid, although it were not made to secure debts and liabilities created simultaneously with its execution.
The court below, in acting upon exceptions filed by the defendant to the plaintiffs’ depositions, excluded all the testimony of the witnesses which tended to establish the fact of the mortgagor’s insolvency; and as the decision of the court *456 excluding the testimony was not excepted to, its correctness cannot be inquired into by this court; the error, if any, being considered as waived by the failure to except. {Code of Practice, sec. 653.)
The only fact proved by the testimony of the witnesses, which was not excluded by the court, is, that the defendant, A. C. Terrill, shortly after he executed the mortgage to his father, left this state, and went to the state of Missouri. The plaintiffs did not allege in their petition that the mortgage embraced all the property which belonged to the mortgagor, or that he was insolvent, or largely indebted at the time the mortgage was executed by him. Still, however, we are of opinion that the facts which appear in the record are sufficient to sustain the allegation that the mortgage was made in contemplation of the insolvency of the mortgagor.
In the first place, the defendant, A. C. Terrill, the mortgagor, although duly served with process, failed to answer, and consequently, so far as he is concerned, the allegations of the petition must be regarded as true.
In the second place, the plaintiffs alleged in their petition that suit had been brought against them and the mortgagor, on the note in which they were bound as his sureties — that judgment would be obtained thereon at the approaching term of the circuit court, and that they would be compelled to pay the same. This allegation was not denied by the mortgagee in his answer. The inference plainly deducible from this admitted fact is, that the mortgagor had no property out of which the judgment could be made when recovered.
And in the third place it appears, from a copy of a record which was filed as an exhibit, that before the mortgage was executed one of the creditors of the mortgagor had brought an action against him for a debt that was due and unpaid, in which action he recovered a judgment about twenty days after the mortgage was executed, upon which an execution shortly thereafter issued, which came to the hands of the sheriff in due time, and was returned by him “no property found” — thus clearly establishing the legal insolvency of the *457 debtor within a very short period of time after the mortgage had been made by him.
In addition to this, numerous creditors appeared during the pendency of the action, and presented their demands against him by filing their answers, which they made cross-petitions against their co-defendants, thereby establishing the fact that he was largely indebted at the time of the execution of the mortgage. And the report of the sale of the property contained in the mortgage shows that it was insufficient to pay even the debts it was conveyed to secure.
These facts and circumstances not only prove that the mortgagor was insolvent at the date of the mortgage, but also that it was executed in contemplation of insolvency. The mortgagee did not introduce any proof that the mortgagor owned any other property besides that embraced by the mortgage; nor did he prove any fact which tended to repel the conclusion which obviously results from the foregoing facts, that the mortgage was made because the parties knew that the mortgagor was unable to pay all his debts. The deed, therefore, falls within the express denunciation of the statute, and operates as a general assignment of the debtor’s estate, unless it can be sustained on the ground that it was made in good faith, to secure debts and liabilities which were created at the same time it was executed.
The inquiry then is, was it made in good faith for that purpose, or was it made to effect some other object?
The plaintiffs alleged in their petition that it was not made and accepted by the mortgagee for the purpose of securing debts and liabilities created simultaneously with it. The defendant stated in his answer that it was executed for the purposes therein set forth, which purposes were all just, fair, and legal; and that his responsibility as surety, and the mortgagor’s responsibility to him, as recited in the mortgage, were simultaneous with its execution. He did not state in his answer that these responsibilities were created, or originated, at the time the mortgage was executed, but only that they were simultaneous therewith. If they had previously existed, they would, when the mortgage was executed, have been simulta- *458 neons with it. He seems carefully to have abstained from making any statement with respect to the time of their first creation, although the plaintiffs had made an express charge that they were not created at the same time the mortgage was made. Neither his statement, nor any thing contained in the mortgage, goes to show that they did not have a previous existence. The execution of a note for a debt on the same day the mortgage was executed, does not prove that the debt did not previously exist. To permit the fact to be thus proved, would place it in the power of the parties to evade the provisions of the statute, and would virtually destroy all its efficacy.
The defendant’s answer is equivocal; it is not responsive to the plaintiffs’ allegation on the subject, and must be regarded as an admission that the debts secured by the mortgage were not created at the time it was executed. It is not sufficient that the evidence of the debt was then executed; the debt itself must have been then created, and not have had a previous existence.
Inasmuch as every mortgage must, from its very nature, where there are other creditors besides the mortgagee, be made to prefer one or more creditors to the exclusion of the others, it follows as a necessary consequence, that whenever it is made in contemplation of insolvency, it is embraced by the statute and operates as a general transfer of all the debtor’s estate, for the benefit of all his creditors, unless it can be brought within the saving in the statute. It therefore devolves on the mortgagee to show that the debts and liabilities which it secures had no previous existence, but originated at the time the mortgage was executed.
In this case the mortgage was executed to indemnify the mortgagee against a liability which he had previously incurred on behalf of the mortgagor. This appears from the mortgage itself, and is admitted by the mortgagee. As to this liability, therefore, the mortgage was made to create a preference, which the statute prohibits. This would of itself cause the deed to operate as a transfer under the statute, even if all the other liabilities which it secures originated at the time it was executed.
This liability was incurred by the mortgagee as the surety of *459 tbe mortgagor. The surety was not a creditor, and was not therefore expressly embraced by the language of the statute. But as a mortgage made for his indemnity would inure to the benefit of the creditor for whose debt he was bound as surety, and thereby virtually operate as a preference of one creditor to the exclusion of others, it must be regarded as falling within its meaning and spirit. The statute having been enacted for the purpose of having a fair and equitable distribution made of the estate of an insolvent debtor among all his creditors, and to prevent unjust preferences, such a construction should be given to it, so far as it is fairly susceptible of it, as will aid in carrying this legislative intention into full and complete effect. Under this rule of construction, the liability of sureties should be considered as embraced by it.
By the provisions of the second section of the act, the petition seeking to have the benefit of it must be filed within six months after the recording of the transfer, or the delivery of the property or effects transferred. The action in this case was commenced in due time, the petition having been filed on the second or third day after the mortgage was executed. There does not, therefore, seem to be any available objection to the judgment of the circuit court.
But it is argued that error occurred in the preliminary proceedings in the court below; first, in ordering a sale of the mortgaged property before the final hearing, without any allegation having been made that the property would be illegally disposed of, or would not be forthcoming when the judgment should be rendered; and, in the second place, in permitting creditors, who were not plaintiffs in the action, to file their answers and assert their demands in the action.
1. As the appellant’s right to the property, under the mortgage, has not been sustained, he cannot complain of a sale of the property which has not been prejudicial to him. But we entertain no doubt that the court had a right to order a sale of the property which was embraced in the mortgage. By the fourth section of the act under which the action was brought, the court may at any time pending the suit, and upon such terms as it shall deem proper, compel the mortgagee to surren *460 der all the property in his possession or under his control, and may make such orders respecting it as it may make concerning attached property. Under section 239 of the Civil Code, the court has authority to direct a sale of the property attached, other than slaves, where, by reason of its perishable nature, or of the cost of keeping it, a sale would be for the benefit of the parties. Here the property covered by the mortgage was all of a perishable nature, and of that description which made a sale of it proper, and for the benefit of the parties.
2. It is provided in the third section of the act, that any number of persons interested may unite in the petition; but it shall not be necessary to make any persons defendants except the debtor and transferee. Other creditors are allowed to present their demands in the same manner the law authorizes it to be done in proceedings for the settlement of the estates of deceased persons. They may, therefore, present their demands during the pendency of the action, by answer and cross-petition, as was done in this case, or they may present them to the master, when a reference has been made to him, to ascertain the debts and demands against the insolvent debtor.
We do not, therefore, perceive any error in the proceedings and judgment of the court below.
Wherefore, the judgment is affirmed.