### THOMAS McCUSKER *vs.* PATRICK McEVEY.

#### *Dissenting Opinion of Mr. Justice Potter.*

NOTE. — The opinion of the majority of the court in the above entitled case will be found reported in 9 R. I. Reports, at page 528. The head-notes to the case as there reported are as follows : —

> If one having no title to land, conveys the same with warranty to A. by a deed which is duly recorded, and he afterwards acquires a title and conveys to B., the purchaser of B. is estopped to aver that the grantor was not seised at the time of his conveyance to A., the first grantee. The after-acquired title will feed the estoppel created by the conveyance to A., and conclude the grantor and all persons claiming under him. And this, although the deed to A. was a deed poll, notwithstanding the *obiter dictum* in *Gordon* v. *Greene*, 5 R. I. 104.
>
> The right of the purchaser of A. to insist on the estoppel is not impaired by admitting, in an action for the possession of the land, that A.'s grantor had no title when he conveyed to him.

At the time that volume was published, the dissenting opinion of Judge POTTER had been mislaid, and could not be found ; but having since been found, it is now published here. — REPORTER.

POTTER, J., dissenting. Weeden has conveyed the same land by warranty deeds to two persons, and the question is, who is to hold it. It is not the case of a grantor having title and conveying land to one, and afterwards fraudulently conveying it to another, who buys it *bonâ fide*, and without any notice of the former deed. Such a case is governed by principles of law already well settled. In this case, the grantor, having no title, conveys the land to one, and afterwards, having acquired title, conveys it to another, both *bonâ fide* and for consideration, and no charge is made as to the honesty of the grantor. It was a mistake of boundaries. And there is no question as to the remedy of the grantees against the grantor on his warranties. But it is contended that if a person sells land with warranty,

to which he at the time has no title, if he afterwards acquire title it enures to his grantee by virtue of the warranty, and that not only the grantor and his heirs, but all subsequent grantees of his are estopped from claiming it, independent of all questions of registry or notice.

Is this an equitable application of the doctrine of estoppel? Estoppels, by matter of record or judgments, are founded on public policy, that there may be an end of strife. Other estoppels seem to be founded on one of the two following considerations: First, that when a person has made a declaration on the faith of which another has expended his money or labor, or acted to his damage, the person who has made the declaration shall not be permitted to deny the truth of it. Secondly, to prevent litigation and circuity of action, that if he has conveyed with full warranty land he does not own, he or his heirs shall not be permitted to claim the land by an after-acquired title, because his grantee could immediately sue on his warranty for damages (or on the old *warrantia chartæ* for equal land), and so a second lawsuit is saved, by allowing the estoppel in the first. In order, however, to have this effect, the grantee must be entitled to recover on the warranty, otherwise there would be no estoppel on this ground. *Comstock* v. *Smith*, 13 Pick. 119.

But both these grounds of estoppel may be united in the same case. So in deeds, where the deed is so drawn as to assert the title of the grantor to the land, he and his heirs may be estopped by this declaration, and this may be sufficient, even if the deed contain no covenants whatever.

It is not necessary for the purposes of this case to consider how far the ordinary warranties in quitclaim deeds are held to operate to estop the grantor. *Comstock* v. *Smith*, 13 Pick. 119; *Trull* v. *Eastman*, 3 Met. 121; *Sweet* v. *Green*, 1 Paige, 473.

Can the estoppel be maintained against the assigns of Weeden on either of these grounds in the present case, where the grantor has innocently conveyed the same land to two grantees equally innocent, and where the contest is between the two grantees? I think not. If the suit were between the grantor and his grantee the case would be very different.

If it is alleged that the first grantee has relied on the declara-

tion in his deed and paid for the land, so equally has the second grantee. If it is alleged that by holding that the grantor and his assigns under the second deed are estopped from setting up any title against the first deed, a suit on the warranty is prevented, and so circuity of action avoided, — it is plain that this ground cannot be maintained, because another lawsuit is not prevented; it is merely left to the second grantee. The spirit of the rules does not seem to apply to such a case. Both of these parties have equally relied on the grantor's declaration: one of the two is to be left to the luxury of a lawsuit; now where is the equity of the case? Under our system of registry, which to some extent takes the place of the ancient ceremonies of delivery of seisin and open possession, the first grantee in this case could have ascertained by examination of the records whether Weeden or any of the mesne conveyancers had a good title to the land; and if he found no title there, or anything to put him on his guard, could have required Weeden, or the person of whom he was immediately purchasing, to satisfy or secure him.

The second grantee, going to the records would find that Weeden at a certain date had acquired the title and had not conveyed it away since that date. Is it reasonable to require him to examine further, so far as relates to his acquiring whatever title Weeden had at that date?

On the other ground he would be required to examine whether his grantor had not conveyed away the land before he bought it; and so on as to every preceding grantor indefinitely. And in case of a strip of land on the border of a lot (which is the present case) it might involve an examination of the title to all the surrounding land, and no one would be safe without it.

In importing the doctrine of estoppel from England, not only has the question of its adaptation to our situation and circumstances, in some of its applications, been singularly overlooked, but as far as warranties are concerned, many decisions here have carried it to an extent not authorized by the old English cases.

England has no general record system. Fines and common recoveries were matters of record, and so were presumed of public notoriety; and if the conusor in the fine, or the tenant to the precipe in the recovery had a freehold, he might pass a fee. And a feoffment was presumed to be of public notoriety, and of such

effect that if the feoffor had any title whatever, or possession, tortious or otherwise, he could pass a fee, though he. had none himself. Every purchaser under such a system must examine the evidence of title in the possession of the vendor, or must trust to his covenants for title.

So far as the vendor and *his heirs* are held to be estopped by the warranty, it is perfectly just. But when it is attempted to apply it to the assigns of the grantor who have purchased *bonâ fide* without notice, its justice may well be questioned. And many of the decisions seem to be based on a complete misunderstanding of the law as laid down by Lord Coke, and of the distinction made in the old law between a rebutter and an estoppel. Lord Coke, in the passage so often cited (265 *a*, \*457, 2 Thomas's Coke, 537), says : " If there be a warranty annexed to the release then the son shall be barred. For albeit the release cannot bar the right for the cause aforesaid, yet the warranty may *rebut* and bar *him and his heirs* of a future right which was not in him at that time ; and the reason (*which in all cases is to be sought out*) wherefore a warranty, being a covenant real, should bar a future right, is for avoiding a circuity of action (which is not favored in law) ; as he that made the warranty should recover the land against the terre tenant, and he by force of the warranty to have as much in value against the same person." And see 2 Preston on Abstracts, 212.

Now this is the old law, founded on reason, and of course none the worse for being old. But the true estoppel bound not only the parties, but " privies in blood, as the heir ; privies in estate, as the feoffee, lessee, &c.; privies in law, as the lord by escheat ; tenant by the curtesy, tenant in dower, the incumbent of a benefice, and others that come in by act in law or in the post, shall be barred and take advantage of estoppels ; and a rebutter is a kind of estoppel." Coke, 352 *a*, \*431 ; 3 Thomas's Coke, 467. But this estoppel applied in the old law only to fines, common recoveries, judgments, and feoffments, which, as we have said, were of presumed notoriety ; and to leases, but not to any conveyances which originated under the statute of uses, such as grant, lease and release, bargain and sale, &c. In leases, by which title such an extent of land is held in England, there is a privity both of contract and of estate. So also there might have been in other conveyances under the old system of subin-

feudation in England. But there is certainly no privity of estate between this plaintiff and this defendant. They do indeed claim under the same grantor by deed poll, and some of the authorities do speak of a privity of estate between a grantor and his grantee, although where the whole estate passes from the grantor by his deed, and there is no subinfeudation, rent, or other reservation, it does not seem to be very applicable. Coke, *271 a, *506; 2 Thomas's Coke, 597; Gardner v. Greene, 5 R. I. 104; Thomas v. Kelly, 3 Jones, 375; Sparrow v. Kingman, 2 N. Y. 242. In Taylor v. Needham, 2 Taunt. 279, it is laid down that he who takes an estate under a deed is privy in estate, but this was a case of a lease. In ascertaining the weight of authority upon the point now before us, we must of course leave out of consideration, 1st. All the English cases, they having no record system; 2d. All the American cases upon leases; 3d. All American cases which concerned only the grantor and heirs ; and 4th. All American cases where, although assigns were held bound, the question of the effect of registry laws was not raised. It is believed that a large part of the English cases so often cited, where assigns are held, estopped, were cases of the classes we have referred to, namely, feoffment, fine, and common recovery, which being matters of record or presumed public notoriety were, from public policy, held to be known to all persons ; or secondly, and much the largest portion, cases of leases in which there is a privity of contract and a privity of estate also. Of the cases most frequently cited, Rawlyn's case, 4 Coke, 52, was a case of a lease ; Doe ex dem. Christmas v. Oliver, 5 M. & R. 202, was a case of a fine ; Trevivian v. Lawrence, 1 Salk. 276 ; S. C. 6 Mod. 256, was on a judgment, and the passages relating to a lease so often quoted from it were extra-judicial; Webb v. Austin, 7 M. & G. 701 ; S. C. 8 Scott N. R. 419, was on a lease ; Weale v. Lower, Pollexfen, 54, was on a fine of a contingent estate. The contingency happened. Held, the heir was bound. See also this case stated in 8 Scott N. R. 419, 446. Taylor v. Needham, 2 Taunt. 278, was on a lease; Sturgeon v. Wingfield, 15 M. & W. 224, was on a lease. These cases show the origin of the doctrine, and they also show its proper application. And Chief Justice Marshall, in Blight's Lessee et al. v. Rochester, 7 Wheat. 535, observes that the doctrine of estoppel originated from the old English and

McCusker v. McEvey.

feudal notions as to the relations of landlord and tenant, and the contract between them. This would be true of the doctrine of estoppel properly so called, but would not apply to rebutter by warranty. Many of the old authorities attribute a peculiar virtue to the indentation of the deed, holding that while a deed poll or lease poll did not estop, a lease or deed indented did. Co. Inst. 47 b, *415; 2 Thomas's Coke, 486; 2 Preston on Abstracts, 210, 212; Webb v. Austin, 8 Scott N. R. 419.

Strong language is used in some of the American cases as to the assigns as well as heirs of the grantor being estopped by a warranty. Douglas v. Scott, 5 Ohio, 194; Patterson v. Pease, Ibid. 190; Bank of Utica v. Mersereau, 3 Barb. Ch. 528. But it is to be observed that for this doctrine the Supreme Court of Ohio, in Douglas v. Scott, 5 Ohio, supra, chiefly refer to and quote the English case of Trevivian v. Lawrence, 1 Salk. 276, which was estoppel on a judgment, but where, as we have said, the court in their opinion extra-judicially give the instance of a lease as an illustration. This was good authority as far as concerned a true estoppel, but did not touch the question of warranty. Judge Story, in Carver v. Jackson, 4 Pet. 1, uses strong language as to an estoppel binding assigns, but that was a case of a recital in a deed; and he there quotes the same case of Trevivian v. Lawrence. This case in 4 Peters is one pretty generally cited as authority in cases where an estoppel is claimed by warranty. And when we examine the American cases we shall find that the largest number of them were decided on this assumed general doctrine, and that the question of its consistency with our registry laws was not even suggested. In a few cases the point was made and decided in favor of the estoppel; yet it does not appear to have been fully argued or to have received the consideration due to its importance. White v. Potter, 24 Pick. 324; Jarvis v. Aikens, 25 Vt. 635. In the latter case the court quote chiefly the case of Trevivian v. Lawrence, which, as we have said, was on a lease. On the other hand, in several American cases the point was made and decided according to the opinion I have felt compelled to adopt. Bivins v. Van Zandt, 15 Geo. 521; Way v. Arnold, 18 Geo. 181; Faircloth v. Jordan, 18 Geo. 350; Linsey v. Ranney, 22 Geo. 627; Gordon v. Beacham, 24 Geo. 150; Great Falls Co. v. Worster, 15 N. H. 452; and see Grosvenor v. Mowry, 33 Ill. 331.

So far, therefore, as the weight of authority is concerned, I cannot consider the matter as so settled as to prevent a court from deciding the question upon its own opinion of its merits. The doctrine of estoppel is itself founded in justice, but the contradictory decisions, conceits, and quibbles, as to indenture, mutuality, &c., connected with it, constitute a just reproach on the law as a science. And this seems to be a case where we might be justified in throwing aside these contradictory and inconsistent decisions, and going back to the first principles upon which the doctrine itself was founded, as set forth by Lord Coke in the passage we have quoted.

There is another view which seems to me to present the equity of the defendant's case in a strong light.

Suppose Weeden, having title, had conveyed to the plaintiff by deed not recorded, and subsequently had conveyed to the defendant by deed recorded, for good consideration and without notice. No one would dispute but that, under our recording laws, the defendant's title would be good against the plaintiff. And can it make the plaintiff's case any stronger if Weeden had no title when he conveyed to him? In the present case, Weeden did attempt to convey to the plaintiff, but he had nothing to convey, and the recording therefore could have no effect, because the same records would give the defendant notice that Weeden did not own the land. And it seems to me that, under our record system, the defendant is entitled to be looked upon in the same light as a *bonâ fide* purchaser without notice.

And which party ought equitably to be favored, — he who carelessly took a deed when his grantor had no title or possession, and without requiring of his grantor any evidence of his title, or he who bought of the grantor when the grantor was in possession and had a title which the records showed he had not conveyed away? *Vigilantibus et non dormientibus jura subveniunt.*

And this seems to have been the view which the supreme courts of Illinois and New Hampshire had in their minds. In *Grosvenor* v. *Mowry*, 33 Ill. 331, the court say : " The subsequent title acquired by the grantor will enure by estoppel to the benefit of the grantee, and this for the purpose of avoiding circuity of action ; and a subsequent purchaser from the mortgagor, under his after-acquired title, is also estopped, *if he had notice.*" And the

McCusker *v.* McEvey.

Supreme Court of New Hampshire, in *Great Falls Co.* v. *Worster*, 15 N. H. 412, say the estoppel is good " not only against the grantor and his heirs, but against purchasers under him, *with notice.*" Both implying that without notice there would be no estoppel.

But there is another point, and an important one, in the present case. So far as relates to the covenants in Weeden's deed, those of seisin and right to convey are, of course, personal, and were broken as soon as made.

And as to the covenant of warranty, it is settled that, in order to run with the land, there must be an estate to support it ; and where no estate passes, it does not run with the land, but is a mere personal covenant, on which only the first grantee could sue. *Slater* v. *Rawson*, 1 Met. 450 ; Platt on Cov. (s. p.) 525 ; *Noke* v. *Auder*, Cro. Eliz. 373 ; Comyn's Digest, Covenant, B, 3 ; *Wheelock* v. *Thayer*, 16 Pick. 68. So if evicted. *Randolph's Adm'x* v. *Kinney*, 3 Randolph, 396. It has been held, however, that possession gives a sufficient estate to carry the covenant. *Fowler* v. *Policy*, 2 Barb. 300 ; *S. C.* 6 Barb. 166. But, in the present case, the plaintiff has never had any possession for these covenants to run with, the defendant and his predecessors in title having always been in possession.

The first grantee, therefore, under whom the plaintiff claims, who took no estate, could very properly have his remedy on his covenants, but that remedy would not pass to his assignees, and *quœre* whether they would have a right to sue in his name.

It is claimed here that the defendant is estopped from setting up his title against the plaintiff. Now it will be found that most of the American cases (at least where any reason at all is given), as we think, misunderstanding Coke, rest the decisions in cases of estoppel by warranty, on the ground of its preventing circuity of action. Coke, 265 *a*, \*467 ; 2 Thomas's Coke, 537 ; *Averill* v. *Wilson*, 4 Barb. 184 ; *Fairbanks* v. *Williamson*, 7 Greenl. 96 ; *Buckingham's Lessee* v. *Hanna*, 2 Ohio, 551 ; *Jackson* v. *Waldron*, 13 Wend. 178 ; *Grosvenor* v. *Mowry*, 33 Ill. 331. The doctrine, if rested on this ground, evidently cannot apply to the present case. Could either the plaintiff or defendant maintain any action on these covenants against each other ? If not, then there is no circuity of action in the present case. And so far as

concerns Weeden, the grantor of both, it is only a question whether the plaintiff or defendant shall have a suit against him.

A large number of the American cases attribute to the warranty the effect of actually passing the estate. On this ground, if the grantee recovered damages, and the grantor afterwards purchased the land, the grantee would get both land and damages; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 571; and the grantor, after suit commenced, and the land had fallen in value, might purchase.

Some of the inconsistencies and absurdities of the doctrine as often applied are well exposed in *Buckingham* v. *Hanna*, 2 Ohio, 551, 557, and by Senator Tracy in his opinion in *Jackson* v. *Waldron*, 13 Wend. 178; and in *Wark* v. *Willard*, 13 N. H. 389, although the court did apply the doctrine in that case, they go on to say : " The doctrine of estoppel is based entirely on equitable considerations, and was adopted with a view to the promotion of the ends of justice. If the reason for the application of the principle should plainly fail in a particular case; if plain injustice would be the result of its application, I am not prepared to say the court would in any such case feel obliged to apply the rule in manifest violation of the purposes of its adoption. In the adoption and application of the doctrine of estoppel, it is manifest that courts have looked beyond the mere forms of conveyance, sought for substantial justice and the means of its promotion, and in a large class of cases found those means in the very convenient principle of estoppel. I am not aware that the principle of estoppel has ever been applied in a case in which the estoppel has been set up in virtue of a conveyance with warranty of him who afterwards received only a trust estate in the land attempted to be conveyed by him. In such case there would be clearly wanting the great principle of equity, which so manifestly lies at the foundation of the doctrine of estoppel; and I think the court would struggle hard against the application of the principle in a case in which such clear injustice would be the result."

In the case of a contingent estate attempted to be conveyed by deed with warranty, the grantee would have to look back upon the records no farther than the instrument creating the estate.

The advantages of our registration system have been so frittered away by our doctrines relating to gaining easements by adverse use, all of which is judicial legislation and of a very dangerous sort, that it seems desirable not to encroach upon it any farther.