HENRY HUDSON *vs.* EBENEZER S. COE.

Piscataquis.    Opinion February 5, 1887.

*Tenants in common.   Assumpsit.   Disseizin.   R. S., c. 95, § 20.*

A tenant in common, independently of R. S., c. 95, § 20, may maintain *indebitatus assumpsit* against his cotenant who has received in money more· than his share of the rents and profits of the common estate.

Such action will not be defeated on account of a dispute raised by the defendant concerning the title, provided the plaintiff is owner in the estate and was not disseized at the date when the income was received in money by the defendant.

The plaintiff in such action has the right to show his title and seizin to the· estate owned by him at the time when the defendant received the income..

Title by adverse possession and disseizin to large tracts of wild and uncultivated land can not be acquired by mere acts of ownership exercised over it, such as tracing and running lines, keeping off trespassers, permitting wild grass to be cut from year to year from small portions of it, and occasionally timber from other portions, paying taxes, etc.

Nor will acts which might properly be held to constitute a disseizin if done by a stranger, have such effect if done by one tenant in common as against the other cotenant.

As between tenants in common, mere possession, accompanied by no act that can amount to an ouster of the other cotenant, or give notice to him that such possession is adverse, will not be held to amount to a disseizin of such cotenant.

Before it will have that effect there must be notorious and unequivocal acts of· exclusion.

ON report.

The opinion states the case and material facts.

*Charles A. Bailey*, for plaintiff, cited, upon the question of· plaintiff's title by levy:    Stat. 1821, c. 60, § 27; U. S. Process Act of May 19, 1828; *Bank* v. *Halstead*, 10 Wheat. 1; *Beers* v. *Haughton*, 9 Pet. 362; *Catherwood* v. *Gapete*, 2 Curtis, 96; *Springer* v. *Foster*, 1 Story, 602; *U. S.* v. *Knight*,

.3 Sumner, 358; *Allen* v. *Portland Stage Co.* 8 Maine, 207; *French* v. *Allen,* 50 Maine, 440; *Fitch* v. *Tyler,* 34 Maine, 463; *Childs* v. *Barrows,* 9 Met. 414; *Dodge* v. *Farnsworth,* 19 Maine, 280; *Bamford* v. *Melvin,* 7 Maine, 14; *Herring* v. *Polley,* 8 Mass. 115; R. S., 1841, c. 94, § 24; *Cowan* v. *Wheeler,* 31 Maine, 439; *Wilson* v. *Gannon,* 54 Maine, 384.

Upon the question of disseizin and its effect, he cited: *Clark* v. *Pratt,* 47 Maine, 55; *Knox* v. *Jenks,* 7 Mass. 492; *Mylar* v. *Hughes,* 60 Mo. 105; Wells, Res Adjudicata, 146; *Bates* v. *Norcross,* 14 Pick. 224; *Coburn* v. *Hollis,* 3 Met. 125; *Slater* v. *Jepherson,* 6 Cush. 129; *Cook* v. *Babcock,* 11 Cush. :206; *Moore* v. *Cable,* 1 Johns. Ch. 386; *Morrison* v. *Chapin,* .97 Mass. 73; *Morris* v. *Callanan,* 105 Mass. 129; *Little* v. *Megquier,* 2 Maine, 178; *Chandler* v. *Ricker,* 49 Vt. 128; *Leach* v. *Beattie,* 33 Vt. 195; *Jackson* v. *Woodruff,* 1 Cowan, :276; *Jackson* v. *Oltz,* 8 Wend. 440; *Munro* v. *Merchant,* 28 N. Y. 9; *Thompson* v. *Burhans,* 61 N. Y. 52; S. C. 79 N. Y. 93; *Miller* v. *Long Island R. R.* 71 N. Y., 385; *Chandler* v. *Spear,* 22 Vt. 405; *Farrar* v. *Eastman,* 10 Maine, 195; *Blood* v. *Wood,* 1 Met. 528; *Cook* v. *Babcock,* 11 Cush. 206; *Parker* v. *Parker,* 1 Allen, 245; *Bates* v. *Norcross,* 14 Pick. 224; *Colburn* v. *Mason,* 25 Maine, 435; *Great Falls M'f'g Co.* v. *Worster,* 15 N. H. 458; *Roberts* v. *Morgan,* 30 Vt. 325; *Downer* v. *Smith,* 38 Vt. 464; *Williams* v. *Gray,* 3 Maine, 207; *Davis* v. *King,* 87 Pa. St. 261; *Dubois* v. *Campan,* 24 Mich. 360; *Varney* v. *Stevens,* 22 Maine, 334; 1 Wash. R. P. 687; *Burhans* v. *Van Zandt,* 3 Selden, 528.

*A. W. Paine,* for defendant.

The title to real estate cannot be tried in an action of assumpsit. *Codman* v. *Jenkins,* 14 Mass. 93; *Miller* v. *Miller,* 7 Pick. 136.

In *Bigelow* v. *Jones,* 10 Pick. 161, the principle was again recognized to its fullest extent.

In *Bridgham* v. *Winchester,* 6 Met. 460, the court carefully distinguish this case from that common one where the defendant

has tortiously converted the plaintiff's personal property into money and is thus liable in assumpsit upon a waiver of a tort.

In the more recent case of *Pickman* v. *Trinity Church*, 123 Mass. 1, the court recognizing the principle say, "The law is indeed well settled that such title (real estate) cannot be tried in an action for money had and received."

In our own State, the court, under the lead of our eminent chief justice of that day, began with laying down its principles in its broadest terms and too in a case where the same question was pending as here, viz: the validity of a levy as the basis of claim. Says the judge, "even admitting plaintiff's levy to be good, yet this action can not be maintained . . . but the plaintiff must seek some other remedy. *Wyman* v. *Hook*, 2 Glf. 337. In *Rogers* v. *Libbey*, 35 Maine, 200, the same principle was adopted, notwithstanding the plaintiff's title was good. If not recognized by defendant no promise is implied. *Balch* v. *Patten*, 45 Maine, 41, on p. 49 the chief justice goes the whole length of our case, being one exactly like ours in principle.

There must be an express or an implied promise. *Porter* v. *Hooper*, 2 Fair. 170. *Richardson* v. *Richardson*, 72 Maine, 409, distinctly recognizes the principle.

There is no privity of contract, such as is necessary to raise a promise, or from which the law will imply a promise. *Allen* v. *Thayer*, 17 Mass. 299; *Badger* v. *Holmes*, 6 Gray, 118.

When there is no contract express or implied, assumpsit will not lie. *Bartlett* v. *Jones*, 60 Maine, 246.

So if the tenant denied the ownership of the plaintiff, although his title was good, assumpsit is not in place. *Howe* v. *Russell*, 41 Maine, 446 and cases cited.

The occupation must be by previous agreement or consent, or by subsequent ratification. *Curtis* v. *Treat*, 21 Maine, 525, and cases cited.

Plaintiff, however, contends that by the statute of Anne the right to recover in such case has been enlarged and that under that statute, as a part of our common law, this action may be:

maintained. And he relies on the case of *Richardson* v. *Richardson*, 72 Maine, 403, already cited by me.

This statute, in its effect, modifying our common law, has been considerably discussed and the cases are not altogether consistent with each other. Besides the case now cited the subject has been quite elaborately discussed in the following other cases in our State. *Gowen* v. *Shaw*, 40 Maine, 56; *Cutler* v. *Currier*, 54 Maine, 81; *Carter* v. *Bailey*, 64 Maine, 458; *Dyer* v. *Wilbur*, 48 Maine, 287; *Monroe* v. *Luke*, 1 Met. 459.

Mr. Justice VIRGIN, in *Carter* v. *Bailey*, 64 Maine, 465, uses the same language, suggesting a right of action, "after demand . . and then he will be liable to special assumpsit. R. S., c. 95, § 16."

In *Moses* v. *Ross*, 41 Maine, 362, APPLETON, J., uses the same language. "Special assumpsit" under "Statute of August 8, 1848," (original of above.)

It does not appear from the officer's return that the appraisers were sworn as the statutes provide, all that he says is that they "upon oath appraised the same," &c. Neither does he refer to any other certificate as part of his return. *Fitch* v. *Tyler*, 34 Maine, 464; *Cowls* v. *Hastings*, 9 Met. 476; *Smith* v. *Keen*, 26 Maine, 411.

In reference to all the foregoing objections the following citations are made, to the end that to make a valid levy every-thing must be done that the statutes requires. *Lumbert* v. *Hill*, 41 Maine, 475; *Williamson* v. *Wright*, 75 Maine, 35; *Benson* v. *Smith*, 42 Maine, 414; *Jackson* v. *Woodman*, 29 Maine, 266; *Glidden* v. *Philbrick*, 56 Maine, 222; *Munroe* v. *Reding*, 15 Maine, 153.

The elaborate discussion of this matter of interest in the following cases must satisfy every mind. *Wolcott* v. *Ely*, 2 Allen, 338; *Cowdrey* v. *Sheldon*, 122 Mass. 267; *Fuller* v. *Dame*, 18 Pick. 472.

In the American Law Register of February, 1886, p. 135, is an elaborate and labored discussion of this whole subject of interest in a case where one acting as agent procured a physician

to use his influence with a railroad company to promote the matter of damages, on the secret promise to receive a certain percentage of the result. The contract was held void.

If one records a deed of a parcel of land and enters upon any part of it and thus occupies it openly and adversely as his own, his occupation of a part is in law that of the whole. This was directly settled in *Props. &c.* v. *Laboree,* 2 Glf. 275. This case is so full and conclusive that no further citation is necessary. See *Foxcroft* v. *Barnes,* 29 Maine, 128 and cases below.

And such possession and occupancy is " sufficient if the possession of defendant shall have been as open, notorious and exclusive as is usual in the case of the ordinary management of similar estates in the possession and occupancy of those who have title thereto." This is the exact language of the eminent chief justice in the case already cited. *Props. &c.* v. *Laboree,* 2 Glf. 287.

And to effect this object it is not necessary that the deed should be one that would be a valid legal deed to pass the title even if the grantor had it. Any deed is sufficient. *Gookin* v. *Whittier,* 4 Glf. 16 ; 3 Glf. 316.

This result follows even though the part actually occupied he had a good title to, provided only the deed covered the disputed part. *Noyes* v. *Dyer,* 25 Maine, 468 ; *Trustees, &c.* v. *Fisher,* 34 Maine, 172.

Title to the whole is made good provided the lots are continuous and not detached from each other. 1 Fair. 191 ; *Otis* v. *Moulton,* 20 Maine, 205.

A tax deed is good to effect the above object though the proceedings have not been regular so as to pass the title. *Little* v. *Megquier,* 2 Glf. 176 ; *Boothby* v. *Hathaway,* 20 Maine, 251 ; *Johnson* v. *Boardman,* 6 Allen, 28.

If one tenant in common enter into the whole lot under a deed duly executed and recorded, even from one who has no title, it is an actual disseizin of his cotenants. Stearns on R. A. 41 ; 5 Glf. 204 ; *Higbee* v. *Rice,* 5 Mass. 352 ; *Rehoboth* v. *Carpenter,* 23 Pick. 137 ; *Prescott* v. *Nevens,* 4 Mason, 330 ; 5 Pet. 355 ; *Bellis* v. *Bellis,* 122 Mass. 414 ; *Thornton* v. *York Bank,* 45

Maine, 158; *Brackett* v. *Persons, Unk.* 53 Maine, 228 and cases cited.

They have been accustomed to run and spot the lines whenever expedient around the town, and that they have lotted the town with lots for greater convenience for operations, in the manner usual for owners to manage and occupy their own lands of a like kind, and under claim of ownership. *Jewett* v. *Hussey*, 70 Maine, 433.

In *Thompson* v. *Burhans,* 79 N. Y. 93-100, the court speak of cases where such use is made of the whole as cutting logs on the land for the use of one's mill, that then the acts do help the disseizin and so of other acts mentioned. *Jackson* v. *Oltz*, 8 Wend. 440, the fact that a part of the land was used as a wood lot, say fifty acres, that saved the whole six hundred acres in question. *Simpson* v. *Downing*, 23 Wend. 322, failed because the time was short of twenty years and is of course of no force.

*Thompson* v. *Burhans*, 61 N. Y. 52, was where only four hundred acres of a whole track of 6300 was thus used and this in one part of the town while the land in controversy was another lot far away. It was like the case cited by me from 77 Maine, 76 and 1 Fair. 191, where the lots were not continuous.

*Monro* v. *Merchant*, 28 N. Y. 9, was a case where a large tract of uncultivated land was held by disseizin, when the acts were like these in our case, where the cutting of wood and timber for the market was held sufficient.

In *Miller* v. *L. I. R. R.* 71 N. Y. 385, the question here discussed is not raised.

But in answer to all those authorities from the reports of other states, it is sufficient to say that the law of our State is different from theirs. Our own decisions are of a more positive character and in our favor.

And besides the New York cases are under a provision of a statute reading different from ours. N. Y. Code, § 83 (61 N. Y. 70).

FOSTER, J. The parties to this suit are tenants in common and undivided of township Number 2, Range 8, north of Waldo

patent in Penobscot county, containing about thirty-six square miles. The plaintiff claims to recover as owner of eleven ninety-sixths, his share of stumpage which the defendant as part owner of the township has collected and retains in his hands. The action is general *indebitatus assumpsit* for money had and received, and is brought not upon R. S., c. 95, § 20, relating to actions between tenants in common, but at common law, based upon the statute of 4 and 5 Anne, c. 16, which is declared to be a part of the common law of this State. *Richardson* v. *Richardson*, 72 Maine, 403.

1. The defendant contends that the plaintiff has no remedy at common law, and that if entitled to any, it can exist only by virtue of R. S., c. 95, § 20, after demand in a special action of assumpsit. We are not inclined to this view, and such we think is not the law.

The ancient rule of the old common law as laid down by Lord Coke (Co. Lit. 199 6,) was, that one tenant in common could not maintain an action against his cotenant for taking the whole profits of the common estate, unless he had been appointed bailiff by his cotenant. It was thus stated : "If one tenant in common maketh his companion his bailiff of his part, he shall have an action of account against him. But, although one tenant in common, without being made bailiff, take the whole profits, no action of account lies against him ; for, in an action of account, he must charge him either as a guardian, bailiff, or receiver, which he cannot do, unless he constitute him his bailiff." Sole occupancy alone was not sufficient upon which to maintain an action. Each was said to occupy *per mi et per tout* and had a right to occupy the whole if the other tenant did not see fit to go in and occupy with him. Such occupancy was held to be no exclusion of the other, and no action would lie against the tenant who by such occupancy had taken the entire profits. But by statute 4 and 5 Anne, c. 16, § 27, this old doctrine of the common law of England was changed, and it was therein provided that an action of account might be maintained by one joint tenant or tenant in common against the other, charging

him as bailiff for receiving more than his joint share or proportion. But in order to maintain such action it was necessary that one tenant should show not mere occupation of the premises by another tenant in common, but an actual receipt by him of the rents and profits over and above his share thereof, and which actually belonged to his cotenant. To avoid the somewhat tedious proceedings pertaining to the old action of account an action on the case upon a promise to account was at first substituted (*Brigham* v. *Eveleth*, 9 Mass. 541) ; and afterwards Lord Holt, in construing the statute, came to the conclusion that whenever account could be maintained *indebitatus assumpsit* might be also ; holding that the statute being a remedial one it ought to receive a liberal construction. *Jones* v. *Harraden*, 9 Mass. 540. While the right of action was founded on the statute of Anne, and not by any right under the old common law, from the liberal construction placed upon it by a long series of decisions, it became as firmly settled that the action of general *indebitatus assumpsit* for money had and received would lie, in place of the old action of account, by one tenant in common against his cotenant, as bailiff, for receiving more than his share of the rents and profits. Such was the doctrine laid down in the cases to which we have referred ; and this form of action was sustained in *Miller* v. *Miller*, 7 Pick. 133, and 9 Pick. 34, to recover money due for the share of one tenant in common in the sale of trees from the common estate. It was allowed in *Monroe* v. *Luke*, 1 Met. 459, which was assumpsit by one tenant in common against his cotenant to recover his share of rents, and it was there held that where it was a claim for money actually received by the defendant, to which in some form the plaintiff has title, it could be conveniently settled in this form of action. It is said in *Fanning* v. *Chadwick*, 3 Pick. 424, that the action of account has become nearly obsolete in England, and that there seems to be no necessity for reviving it here, and that assumpsit now has all the advantages, without the disadvantages, peculiar to an action of account. In support of the same principle may be cited : *Cochran* v. *Carrington*, 25 Wend. 410 ; *Richardson* v. *Richardson*, 72 Maine, 403 ; *Gowen*

v. *Shaw*, 40 Maine, 58; *Cutler* v. *Currier*, 54 Maine, 91; *Holmes* v. *Hunt*, 122 Mass. 513; *Sargent* v. *Parsons*, 12 Mass. 152; *Dickinson* v. *Williams*, 11 Cush. 258. It is an equitable form of action to recover money which the defendant in equity and good conscience ought not to retain.

But when resorted to as the common law action—the outgrowth of the statute of Anne, and independently of R. S., c. 95, § 20—by one tenant in common against his cotenant, it is to be "restricted to cases where the money has been actually received, and the liability to account has resulted in a duty to pay money, or where the defendant holds the share as bailiff of the plaintiff, or the occupation has been by consent." *Currier Cutler*, 54 Maine, 91.

2. It is also claimed in defence that this action can not be sustained because the question of title is involved in it. But we have no doubt the action will lie notwithstanding there may be a mere dispute raised by the defendant concerning the title, provided the plaintiff is owner of the estate and was not disseized at the date when the income from the common estate was received in money by the defendant. Such is the conclusion of this court in the recent case of *Richardson* v. *Richardson*, *supra*. Were it otherwise, the plaintiff in any case seeking his common law remedy under the statute of Anne, notwithstanding his title and seizin be complete, might be subjected to the annoyance as well as expense of a nonsuit, whenever the defendant cotenant might see fit to dispute his title. We do not mean to be understood as denying the general doctrine, where it has its proper application, that the title to real estate is not to be tried in an action of assumpsit; but we are satisfied that it has no application in the present case. It must also be borne in mind that this is not an action for use and occupation of the common estate under R. S., c. 95, § 20, which is a modification of the statute of Anne, but of *indebitatus assumpsit* authorized, through a long line of decisions, by the latter statute as the common law action to recover the plaintiff's due proportion of moneys in the hands of the defendant which he has received from the common estate.

Many of the decisions to which our attention has been called and in which it is held that the title to real estate can not be tried in an action of assumpsit, are those for use and occupation depending upon contract express or implied between the parties, and which have no application to the case at bar.

There are many cases where the right to recover depends upon the title, yet they are not cases in which the title is tried, within the meaning of the rule. Neither does the rule prevent an action for money had and received in many cases which require an investigation of title, as was held in *Parkman Trinity Church*, 123 Mass. 6.

The plaintiff in this action undoubtedly has the right to show his title and seizin to the estate owned by him at the time when the defendant received the income. Upon proof of these facts he would be entitled to his remedy under the statute of Anne. "If the defendant were in possession of the estate under a denial of the plaintiff's title, it would be evidence tending to show the disseizin of the plaintiff, and if it resulted in proof of that fact—as it might well do if unexplained—then and not till then would the relative position of the parties be changed." *Richardson* v. *Richardson, supra.*

To make out his title, then, the plaintiff starts with the unquestioned title to five ninety-sixths of the township by deeds from the heirs of Henry Ilsley who was the owner of one-sixteenth in common and undivided in 1839 ; and to six ninety-sixths by levy of an execution upon a judgment recovered in the United States circuit court for the district of Maine at the October term, 1841, in favor of the Merchants' National Bank of Newburyport, against Seth Paine and John L. Meserve, and from said bank through sundry conveyances to himself by deed bearing date of July 1st, 1884.

It is in reference to the plaintiff's title under this levy that the defendant takes issue with the plaintiff, and a considerable portion of the argument of counsel has been devoted to this branch of the case. We do not deem it necessary, however, to enter upon an investigation of title under the levy, inasmuch as it is not claimed that the plaintiff obtained any title to the six

ninety-sixths therein mentioned till July 1, 1884—several months after the stumpage had been taken off and the money had been received by the defendant. If otherwise entitled to recover, the plaintiff can recover only his due proportion of such money as was received by the defendant from stumpage sold after his title accrued. *Kimball* v. *Lewiston Steam Mill Co.* 55 Maine, 499. From an examination of the deeds from the heirs of Henry Ilsley, it will be seen that the plaintiff at that time had acquired title to only four ninety-sixths of the township.

3. Admitting, however, the plaintiff's title through deeds from the heirs of Ilsley, the next ground of defence interposed to the plaintiff's action is that he and his predecessors in title have been disseized by the defendant and Samuel H. Blake—the other tenant in common—and that they have acquired by adverse possession for more than twenty years, title to the whole township, and are entitled to retain the entire stumpage.

To establish this claim of disseizin the defendant, who was the admitted owner of seven-sixteenths and his alleged joint disseizor of another seven-sixteenths—the two owning seven-eighths of the whole township—puts in a tax title acquired by themselves of the entire township, and claims under this recorded deed, as color of title, a disseizin of their cotenants.

The evidence upon which this claim of adverse possession and disseizin is based is detailed by the defendant—in substance, consisting of acts of ownership exercised over this township—such as tracing and running lines—keeping off trespassers—permitting wild grass to be cut from year to year from small portions of it, and occasionally timber from other portions—paying taxes, etc. This whole township of thirty-six square miles was principally forest and timber land—all in its natural and unimproved state. The question we are asked to consider in this case certainly presents the doctrine of disseizin somewhat diffusively applied. The cases are numerous, however, where acts even stronger than are furnished in this case are declared to be insufficient to work a disseizin even of the sole owner of unimproved lands. *Chandler* v. *Wilson*, 77 Maine, 76; *Slater* v. *Jepherson*, 6 Cush. 129; *Parker* v. *Parker*, 1 Allen, 245;

*Little* v. *Megquier*, 2 Maine, 178 ; *Thompson* v. *Burhans*, 79 N. Y. 98, 99.

But acts which would properly be held to constitute a disseizin if done by a stranger have no such effect if done by a tenant in common, as the possession of one tenant in common is that of all. The entry of one is the entry of both. Either has the right to actual possession, and such possession will be presumed to be in accordance with his title—rightful rather than wrongful —till some "notorious and unequivocal act of exclusion shall have occurred." *Colburn* v. *Mason*, 25 Maine, 434. And by all the authorities it is settled that mere possession, accompanied by no act that can amount to an ouster of the other cotenant, or give notice to him that such possession is adverse, will not be held to amount to a disseizin of such cotenant. *McClung* v. *Ross*, 5 Wheat. 124. The acts of ownership by one tenant, which if done by a stranger would operate as a disseizin of the other cotenant, must be done, as was said in *Ingalls* v. *Newhall*, 139 Mass. 273, "in the assertion of an independent title, inconsistent with that of the cotenant, and be of such character that it is, or must reasonably be held to be, known by those in derogation of whose title they are done that this is so." And it has been held that the entry of a tenant in common upon property, even if he takes the rents, cultivates the land, or cuts the wood and timber without accounting or paying for any share of it, will not ordinarily be considered as adverse to his cotenants and an ouster of them, but in support of the common title. *Thornton* v. *York Bank*, 45 Maine, 158.

This principle has been thus expressed by the Vermont court in the case of *Roberts* v. *Morgan*, 30 Vt. 325, in which the court say : " Where one joint owner is· in possession of the whole, the legal presumption is that he is keeping posession, not only for himself but for his cotenant, according to their respective interests, and the other joint owners have the right to so understand until they have notice to the contrary ; and the statute would only run from the time of such notice. We consider the principle substantially the same as between landlord

and tenant, as to converting a mere fiduciary possession into an adverse or hostile one."

The nature of the property in which the tenants are owners—its character, situation and extent—must be taken into consideration, moreover, in determining the question of possession and occupation, and whether it is exclusive or otherwise. And between tenants in common it is very difficult to determine by any fixed rule what may constitute disseizin. Each case must be judged by its own particular circumstances and the facts connected with it.

In this case the facts are plain, and there is but little controversy concerning them. Nor do we consider it necessary to extend this opinion by any further reference to them. Assuming them all to be true, they do not show such exclusive possession, or such notorious and unequivocal acts of exclusion as to amount to a disseizin of the plaintiff or his predecessors in title. The action therefore is maintainable.

The defendant admits that he received a certain amount of money from the sale of stumpage in the fall and winter of 1883-4. That sum was six hundred and ninety-one dollars and seventy-nine cents. At the time this stumpage was taken from the township the plaintiff had acquired title to only four ninety-sixths of it, and that is the proportion to which he is entitled of the money in the defendant's hands.

> *Judgment for plaintiff for twenty-eight dollars and eighty-two cents, with interest thereon from the date of the writ.*

PETERS, C. J., WALTON, DANFORTH, EMERY and HASKELL, JJ., concurred.