F. H. HAYDEN, ADMINISTRATOR OF SARAH P. HAYDEN, *v.* A. J. MERRILL.

*Tenants in Common. Account. Gen. Stat.* § 1, *Chap.* 41. *Statute* 4 & 5 *Anne. Declaration. Judgment to Account. Bailiff.*

At common law, the appropriate remedy by a tenant in common against his co-tenant, who had secured more than his just share, was an action of account against him as his bailiff; but the action would not lie by one tenant in common against his co-tenant, who occupied the whole or more than his just share of the premises held in common, unless the defendant had been in fact appointed such bailiff by the plaintiff.

Our statute (Gen. Stat. § 1, chap. 41), compared with the Statute 4 & 5 Anne, and construed.

The Statute 4 & 5 Anne constitutes the receiver bailiff of his co-tenant without special appointment or agreement; and the action given by the statute is made to depend upon privity of estate between tenants in common, or joint tenants, and not upon privity of contract.

The construction of our statute is the same. But in order to entitle the plaintiff to the benefit of the statute, he must allege specifically in his declaration the facts necessary to bring the case within it, viz.: the joint tenancy, or tenancy in common, of the plaintiff and defendant, the proportions in which they severally hold, and that the defendant has received more than his just share or proportion.

A bailiff at common law is answerable, not only for what he has received as such bailiff, but also for what he might have made of the lands with proper diligence; but under the statute, he is not made liable beyond what he has actually received more than his just share.

Where, as in this case, the occupancy of one tenant in common is beneficial, and at a profit to such occupant, and is entire and exclusive, he is bound to account to his co-tenant for what he has received by such occupancy more than his just proportion.

Generally in an action of account, the judgment to account is conclusive of the defendant's liability to account, and the auditor is to examine the items and report the amount either party is in arrear.

The auditor allowed the plaintiff the whole value of wood taken by the defendant from the premises. *Held,* that this was error, and that the auditor should have allowed but half of it.

The opinion of Lord Denman, Ch. J., in *Eason* v. *Henderson,* in the Court of Queen's Bench, 64 E. C. L., 984, commented upon and approved, but the opinion of Park B. on the hearing upon the exceptions in the same case in the Exchequer Chamber disapproved.

ACTION OF ACCOUNT. The court at the June term, 1871, PIERPOINT, Ch. J., presiding, rendered judgment, *pro forma,* for the plaintiff, upon the auditor's report, overruling the defendant's exceptions thereto. To which decision the defendant excepted.

"The defendant, residing in Colchester, in the county of Chittenden, in the year 1850, was the owner and keeper of a hotel in said Colchester.

The defendant was solicitous to purchase a 100 acre tract of land which lay near his public house, and was owned by Underhill and Ferris, residing in New York.

The defendant applied to Mrs. Sarah P. Hayden, who was a sister of the defendant, and had then lately married Frederick Hayden, of Middlebury, to join him (the defendant) in the purchase of the Underhill and Ferris lot of land; and represented to her that the purchase of the land, in connection with the defendant, would be a good investment for her.

The said Sarah P. Hayden, the intestate, consented to join the defendant in the purchase of the land, and she and defendant purchased the same, and took a deed thereof from Underhill and Ferris to themselves.

Each of said parties paid $500—making $1,000—for the consideration of the purchase of said land.

At the time of the purchase, the land was a pine plain, of a light sandy soil, and covered with a small growth of pitch pines and brush—the original or first growth of timber having been cut off from the land.

It was understood, by the defendant and the said Sarah, and assented to by the husband of the said Sarah, the said Frederick, at the time of the purchase of the said lot, that a portion of said lot, and such as might be required, should be appropriated for a race-course for horses—for training, driving and trotting horses, the defendant expecting to aid his business in his public house by means of such course, and profit from the same, and the said Sarah expecting from what she might derive from the use of said course and from the growth of the wood upon the land to receive a fair and proper income from her investment in the purchase of the land. No different agreement was made between the parties further than that a portion was to be appropriated for a course, and the remainder was to be suffered to remain for the growth of wood. After the purchase of the property by said parties, the defendant arranged and made a race-course on said land, in a circular form, using in making the course and appendages about one half of the land. The land within the circle or course was cleared, and this prevented any growth of wood on the land thus used.

The defendant, after fitting the course, continued to occupy the same up to the time of the sale of said Sarah's interest in the land, which was on the 13th day of January, 1868.

The land, aside from what was used for said course by defendant, remained unoccupied and unimproved from the time of the purchase to the time of the sale, but the growth of wood on the

same would be equal to six per cent. per annum upon the cost of the land, so that the investment on that part of the lot was equal to a six per cent. investment.

The defendant had the entire use of that part of the land from the time of purchase to the time of the sale. At times he received an income for the admission of persons, teams and horses upon the ground on the exhibition of horse racing—the amount of which did not appear to the auditor; but the sums received as profit, over expenses in this way, were not large; but the defendant used the race-course yearly, during said time, for the purpose of training horses, and by doing this he obtained a large amount of custom at his public house, from which he derived large gains and profits; and that said course, and the business it furnished, was a source of large gains and profits in connection with his said public house; and the business thus produced materially aided the business of his public house, but what amount the defendant gained by the use of this course the auditor cannot determine.

The auditor finds that if the land, which was occupied by the course, had been left to grow wood upon, as the remaining part of the lot was, the growth of the wood would have produced six per cent. per annum on the cost to the owners, but perhaps from this sum the taxes and some remuneration for the care of the premises should be deducted.

The auditor finds that the income from that part of land used for the course cannot be definitely ascertained, but that the defendant had the use of the same in his business and to his profit, and should account to the plaintiff for what it would have produced to plaintiff if the defendant had not appropriated it to his own use, as aforesaid.

As the result of the claims made before the auditor, and his judgment and finding thereon, he states the account as follows :

The defendant to account to plaintiff for each year over taxes and care, $7.50.

| | | |
|---|---:|---:|
| This sum for 17½ years amounts to | 131 | 25 |
| Interest on the same, cast from the end of each year, | 67 | 67 |
| | | |
| Making, | $198 | 92 |
| Wood taken from the lot by the defendant, deducting expenses, | $14 25 | |
| Interest on same, | 3 42 | 17 67 |
| | | |
| Balance due plaintiff, | $216 | 59 |

The auditor finds that the course occupied about one-half of the land in the lot, and that plaintiff's share of the use of the same

would be about $15 per year. Deducting the taxes and a fair price for the care of the whole land, which would be $7.50 *per annum*, leaves the sum of $7.50 per year with which the defendant should be charged.

Upon this balance the auditor has cast interest from the end of each year, to the time of the sale of the land by plaintiff, and interest on the balance from 13th January, 1868, to the present time, but the same is subject to the opinion of the court.

The auditor does not find that the defendant agreed to pay Mrs. Hayden a particular sum for the use of the course, or the land occupied by the same, but that it was expected by both parties, at the time of the purchase and afterwards, that the said Sarah should have a reasonable return for her investment, and that said course should bear its proportion in paying the income.

The auditor does not find that there was any agreement on the part of defendant to pay interest for the annual use of the course; and that he was not, during the time aforesaid, called upon to pay for the use of the course or any interest thereon, but that in the matter of accounting it is just and equitable that defendant should pay for the use of the same and interest thereon as computed.

*E. R. Hard*, for the defendant.

Upon the facts reported, the defendant is not liable to account to the plaintiff for the use of the land, nor for any part of the wood taken from it by the defendant. *Henderson* v. *Eason*, 9 E. L. and Eq., 337 ; *Peck* v. *Carpenter*, 7 Gray, 283 ; *Sargeant* v. *Parsons*, 12 Mass., 153 ; *Monroe* v. *Luke*, 1 Met., 459. If liable at all on account of the wood, he is liable for only *one-half* of what he took, and not, as the auditor has allowed, for the *whole*. No *interest* can properly be allowed against the defendant. Sedg. on Dam., 433, 437, 440 ; 11 Vt., 122, 214 ; 26 Vt., 544. The defendant is entitled to judgment for the amount paid by him for *taxes*.

*Stewart & Eldridge*, for the plaintiff.

The opinion of the court was delivered by

Peck, J. The defendant's counsel insists that upon the facts reported the defendant is not liable to account to the plaintiff for the use of the land, nor for any part of the wood taken from it

by the defendant. The lot of land in question, at the time the parties purchased it, the report shows, was covered with small second-growth pitch pine ; and that according to the understanding between the parties at the time of the purchase, the defendant cleared a portion of the lot, and converted it into a race-course, for training, driving and trotting horses ; expecting thereby to increase the business of his hotel, which he was keeping in the vicinity of the lot, and so used it as a source of profit ; and the residue of the lot, being about one half, was suffered to remain as it then was, with a view, in the mind of the parties, to profit by the growth of the wood upon it. This condition of things contin- ued, according to this understanding of the parties, during the tenancy in common. It is for the use of the race-course portion of the lot that the auditor has made the defendant chargeable. In support of the defendant's objection to this claim, his counsel re- fer to three cases in Massachusetts, *Sargent* v. *Parsons*, 12 Mass., 153 ; *Monroe* v. *Luke*, 1 Met., 459 ; and *Peck* v. *Carpenter*, 7 Gray, 283 ; and to *Henderson* v. *Eason*, 9 E. L. & Eq. R., 337, to show that where one tenant in common occupies the whole, or more than his share of the common estate, he is not liable to ac- count to the other therefor, in an action at law by his co-tenant, in the absence of any agreement between them on the subject. The counsel for the plaintiff have referred us to no authorities on the subject. At common law, the appropriate remedy by a tenant in common against his co-tenant, who had received more than his just share, was an action of account against him as his bailiff ; but the action would not lie by one tenant in common against his co-tenant, who had occupied the whole or more than his just share, unless the defendant had been by the plaintiff, in fact, appointed such bailiff ; and perhaps the same rule applied to a case where one tenant in common had received more than his just share of rents. But to remedy this defect of the common law, the statute 4 & 5 Anne, ch. 16, was enacted, by the 27th section of which it is provided, " That from and after," &c., " actions of account shall and may be brought and maintained against the executors and administrators of every guardian, bailiff, and receiver ; and also by one joint tenant, and tenant in common, his executors

and administrators, against the other as bailiff, for receiving more than comes to his just share or proportion; and against the executor and administrator of such joint tenant or tenant in common; and the auditors appointed by the court, where such action shall be depending, shall be, and are hereby empowered to administer an oath, and examine the parties touching the matters in question, and for their pains and trouble in auditing and taking such account, have such allowance as the court shall ·adjudge to be reasonable, to be paid by the party on whose side the balance of the account shall appear to be." Our statute is similar, which provides that the action of account may be sustained " by one joint tenant, tenant in common, or co-parcener, his executor or administrator, against the other, his executor or administrator, as bailiff, for receiving more than his just proportion of any estate or interest." The declaration has not been shown us, but we take it for granted that it contains the necessary allegations to bring the case within the statute; as the case has been argued without any question being raised upon that point. The authorities all agree that this statute 4 & 5 Anne constitutes the receiver bailiff of his co-tenant, without special appointment, and without any agreement on the subject; that the action given by the statute is made to depend upon privity of estate between tenants in common, or joint tenants, and not upon privity of contract. The construction of our statute has been to this effect so far as we have had any decisions on the subject. But in order to entitle the plaintiff to the benefit of the statute, he must allege specifically in his declaration the facts necessary to bring the case within it. The joint tenancy, or tenancy in common, of the plaintiff and defendant, and the proportions in which they severally hold, must be alleged; and that the defendant has received more than his just share or proportion. This is necessary, in order that the judgment to account may show on what basis or rule of liability the defendant is to account; because a bailiff at common law is answerable, not only for what he has received as such bailiff, but also for what he might have made of the lands with proper diligence, or as some of the books say, what he might have made without his willful fault; but under the statute he is

not made liable beyond what he has actually received more than his just share or proportion.

But it is claimed that the statute applies only where one tenant in common receives something, as rent, or otherwise, from some third person, for or on account of the premises; that one tenant in common occupying the whole, or more than his share of the premises, and thereby receiving more than his share of the issues and profits thereof, is not liable to account for the surplus to his co-tenant. If the statute in the one case makes the tenant in common receiving more than his share bailiff of his co-tenant by operation of law, by reason of privity of estate, without privity of contract, it is difficult to see why it does not in the other. *Sargent* v. *Parsons*, 12 Mass., 149, cited in support of the defendant's proposition, was an action of account between tenants in common; but it was decided upon the principles of the common law, independent of any statute. The statute of Anne was never enacted in Massachusetts, and the court held in that case that the action was not brought upon that statute, and therefore, that it was immaterial whether that statute was in force there by user or not. In *Munroe* v. *Luke*, 1 Met., 459, which was an action of assumpsit by a tenant in common against his co-tenant, to recover the plaintiff's just proportion of rents which the defendant had received of a lessee of the premises, under a lease executed by the defendant as sole lessor, without any privity of contract between the plaintiff and the defendant, or between the plaintiff and the lessee, the plaintiff recovered. The question did not arise whether the defendant could have been held liable by having occupied the premises himself. The other case cited by defendant's counsel, *Peck* v. *Carpenter*, 7 Gray, 283, was an "*action of contract*," by one tenant in common against his co-tenant, of a farm, who had had the sole possession during the whole tenancy in common, taking from it all the crops, and receiving all the profits. The case is briefly disposed of by the court, upon the ground that "no remedy is given by the common law" "to recover for such sole use and occupation,"—and adding that, "it is only when a tenant in common has received in money more than his share of the rents and profits of the common estate, that an action at law

can be sustained in this commonwealth by his co-tenant to recover the surplus." In reference to this case, and *Munroe* v. *Luke*, 1 Met., already mentioned, it is to be considered that before either of these decisions the action of account had been expressly abolished by statute, by the Rev. St., ch. 118, § 43, with a provision that where the nature of an account is such that it cannot be conveniently settled in an action of assumpsit, it may be done by bill in equity.

It is obvious that these Massachusetts cases can have but little if any bearing upon the construction of the statute of Anne, or of our statute, in reference to the action of account. In *Wheeler* v. *Horne*, Willes, 208, the declaration averred that the defendant was bailiff of the plaintiff of one twelfth part, undivided, of the premises described, from April 1, 1720, to October 1, 1734, and received the annual profits thereof for all that time, to render a reasonable account therefor to the plaintiff when, &c. The defendant pleaded that he never was bailiff or receiver of the plaintiff in manner and form, &c., on which issue was joined. The plaintiff proved that he and defendant were tenants in common of the premises; plaintiff of one twelfth, and the defendant of eleven twelfths, for the time alleged, and that the defendant had been in possession of, and lived upon the premises, and took to his own use during all that time all the issues and profits of the whole twelve parts, about £8 a year, and refused to account with or pay the plaintiff her share; but did not prove that she had ever appointed the defendant her bailiff of her twelfth part. Verdict subject to the opinion of the court. The court held that the plaintiff was not entitled to judgment, for the reason that the declaration not alleging *that the parties were tenants in common*, the bailiff set forth in the declaration must be intended to be a bailiff by *appointment*, and must be so proved. As the case showed nothing received by the defendant except by his own personal occupancy of the premises, if, as the defendant claims, that is not such a receipt as comes within the statute, or renders a tenant in common liable, it is singular that WILLES, Ch. J., in the full exposition he gave of the statute of Anne on this subject, as to what was necessary under it, and at common law, to render a

tenant in common liable to account, did not allude to this defect in the proof as an objection to the plaintiff's recovery. Had it not been considered in that case that a receipt by the defendant of more than his just share by his personal occupancy was of a character, so far as that point was concerned, to bring the case within the statute, the objection can hardly be supposed to have escaped observation. In *McMahon & wife* v. *Burchill et. al.*, 2 Phillips, 127, (22 Eng. Ch. R., 125,) this question is alluded to, and some observations are made by Lord Chancellor COTTENHAM, adverse to the proposition that one of several tenants in common by mere occupancy, without contract, unaccompanied by exclusion, is rendered liable to account for rent to his co-tenants; but the remarks must be taken to have reference to the particular circumstances of that case; as he says, there may, no doubt, be various modes of occupation which would make the party occupying liable for rent to the other tenants in common. But the case finally turned on another point; that is, that the claim for rent set up by the defendant against the orators, whether valid or not, was not a proper matter of inquiry or offset in that suit, which was brought merely for the recovery of legacies. About the same time the question arose in *Henderson* v. *Eason*, 15 Simonds, 303, (28 E. Ch. R., 303). This was in 1846. The suit was in chancery for the settlement of the testator's estate. The defendant, Eason, was the brother and executor of the testator, and had suffered the testator for several years before and down to the time of the testator's decease, to continue in the exclusive occupation of a farm, of which they were tenants in common in equal portions, without receiving or demanding any rent or other remuneration from him. The question was whether the defendant was entitled to retain out of the testator's estate a moiety of what the master had found to be a fair occupation rent for the entire farm for the time in question. Sir Lancelot SHADWELL, vice chancellor of England, decided that under the statute 4 & 5 Anne, the defendant would have had a right to bring an action of account against the testator; and that he would be entitled to bring the like action against the personal representative of the testator, had he not himself been such representative; and therefore the master was right in allowing, as he

did, a fair occupation rent. The chancellor, however, on appeal, *" doubted whether the claim should have been allowed until the petitioner had established his right at law ;"* and therefore ordered him to bring an action at law, requiring the orators in the bill in chancery to admit, for the purposes of the action at law, that they were the executors of the testator. Ib. 305. Such action was brought, an action of account under the statute 4 & 5 Anne, ch. 16, § 27, *Eason* v. *Henderson*, 12 Ad. and E. 986, (64. E. Com. L. 984,) and argued in the court of Queen's Bench; and after being held for advisement, it was decided, Lord DENMAN, Ch. J., delivering the opinion of the court, that the defendant, the tenant in common thus occupying, and thereby receiving more than his just share, was bailiff of the plaintiff and bound to account; and that for this purpose it is not necessary that the defendant should receive rent of another for the use of the premises. The Lord Chancellor subsequently directed another action of account to be brought, not being satisfied with the decision of the court of Queen's Bench, which was brought accordingly, and tried before COLERIDGE, J., when the same facts appeared, with the additional fact that the premises were worth £300 *per annum* to let. The decision being the same as in the former case, a bill of exceptions was tendered on behalf of the defendant, and the case was heard in the Exchequer Chamber before three barons of the court of Exchequer, and three judges of the Common Pleas, and judgment rendered reversing the judgment of the Queen's Bench, upon the ground, to use language of PARKE, B., that " this provision of the statute applies only to cases where one tenant in common receives the money, or something else, from another person, to which both co-tenants are entitled, simply by reason of their being tenants in common, and in proportion to their interest as such, and of which the one receives and keeps more than his just share according to that proportion "—and again, that " in taking all the produce he cannot be said to receive more than his just share and proportion to which he is entitled as tenant in common, as he receives in truth the remuneration for his own labor and capital, to which a tenant has no right." No case is to be found in our reports in which such narrow construction has been put upon our

statute on this subject, but so far as any inference can be drawn from cases that have arisen under it, it is in favor of a more liberal construction. In *Wiswell* v. *Wilkins*, 5 Vt., 87, which was an action of account between tenants in common, it appeared that while Burton owned the premises, consisting of houses and lands, the plaintiff levied an execution upon one undivided half; and the defendant and those under whom he claimed, at the same time levied upon the other undivided half by virtue of executions against Burton—that the defendant had for many years enjoyed and occupied the whole premises, taking all the profits thereof to himself; that the levies were all defective; but Burton, the execution debtor, never objected to, but acquiesced in the levies, the statute of limitations having run against him in favor of the levying creditors. The plaintiff claimed in the county court that upon the proof of such title and possession, the defendant should be legally regarded as a tenant in common with the plaintiff, but the court decided that the evidence offered would not entitle the plaintiff to a verdict, unless it were also proved that the defendant had enjoyed and occupied the moiety claimed by the plaintiff, by *contract or license* of the plaintiff, and in subjection to his supposed title; and directed a verdict for the defendant. The supreme court could not have reversed the judgment in this case, if the receipt of more than his just proportion by one tenant in common, by means of his occupancy, would not bring the case within the statute. But the court did reverse the judgment, holding that although the defendant occupied under no agreement with the plaintiff, the plaintiff's title as well as the defendant's had been perfected by such occupancy, and that the defendant was liable to be called to account by the plaintiff. It does not appear that the attention of the court was called to this precise question, but if the decision is not an adjudication of the question, it is at least an instance of a practical construction of the statute, contrary to that now claimed by the defendant's counsel. When an English statute, which has received a known and settled construction, is enacted in this State, it is generally to be presumed that the legislature intended to adopt it with such settled construction. Whether the difference in the language of our statute from that of the

English statute is deserving of any consideration, it is unnecessary to say. This question of construction of the statute of Anne having but so recently arisen in England, and upon which there is such a difference of opinion there between the different courts and judges, we do not feel bound to adopt the narrow construction held to in *Henderson* v. *Eason.* It is too recent to be absolutely binding as an authority for construing our statute, so long in force before that decision was made; especially when we have reason to believe that the broader construction adopted by the court of Queen's Bench in *Eason* v. *Henderson,* as there qualified and elucidated in the opinion of that court, delivered by Lord Denman, Ch. J., is more in harmony with the practice under our statute, and calculated more fully to cure the mischief or supply the defect of the common law, and thereby more completely to accomplish the purpose of the statute.

There are cases, undoubtedly, where one tenant in common, who has occupied the common property to some extent, and the other has not, where the former would not be accountable to the other for such occupancy. As if two own land in common, peculiarly adapted to and used for pasturage, yielding abundant herbage for both, and one turns in his cattle, but not enough to consume his proportion of the grass; and the other neglects to appropriate his proportion of the herbage to any use — voluntarily suffering it to go to waste. Or if two own arable land in common, and one, without any detriment to the land, cultivates his proportion, leaving the residue equally good, for his co-tenant to occupy, who suffers it to lie vacant. Or if the common property consists of two dwellings of equal worth and convenience, and one tenant in common occupies one, and leaves the other for his co-tenant to occupy if he will, who neither occupies nor puts it to any use. In such case it might not be legal or just that the tenant who occupies should be made to account to the other; not because the benefit he has received is not of a kind that comes within the statute, but because he has not received " *more than his just proportion of any estate or interest,*" and it was the folly of the other that he did not receive as much. There may be cases where one tenant in common may be in the technical or nominal possession of the

whole premises, not needed for his use, the occupancy being more for the preservation and care of the property, than benefit to such occupant, and not interfering with an equal occupation by the other, when it would be unjust to compel him to pay for such occupancy; as in case of a wharf in one of the cases referred to by the defendant's counsel, where the defendant only occasionally used it for landing his own goods, not interfering with a like, or any proper use to which his co-tenant might have applied it at the same time. On the contrary, suppose the premises consist of land peculiarly adapted to the growth of grass for hay, and one tenant in common has the sole occupancy of the whole, and annually, at a profit, cuts and sells, or consumes the hay, there is no apparent reason why he should not account to his co-tenant for what he has received more than his just proportion. There is no insurmountable difficulty in such case, as is supposed by Parke B. in *Henderson* v. *Eason*, in determining to what extent the benefit received is attributable to the labor and industry of the occupant, and to what extent to the use of the land. The fact that in some cases it would not be just to hold the tenant occupying without contract to account to his co-tenant, is no reason why he should not be liable in any case. There is no danger of injustice from such liability where the statute makes the tenant liable only "*for receiving more than his just proportion,*" which is to be determined by the facts in each particular case.

We will not attempt to lay down any particular rule as a general test of liability of one tenant in common occupying the common property. But it is safe to say that where, as in this case, the occupancy of one tenant in common is beneficial, and at a profit to such occupant, and is entire and exclusive, he is bound to account to his co-tenant for what he has received by such occupancy more than his just proportion. That the occupancy by the defendant was to him beneficial, and at a profit, is found by the auditor. It also appears that this occupancy by the defendant was not only entire and exclusive in fact, but that from the peculiar purpose to which he fitted and applied it, it was necessarily and intentionally exclusive of any use or occupancy by the plaintiff. It is true that the race-course occupied by the defendant did not

embrace the entire premises, but in effect the defendant's occu-
pancy was entire, as it was agreed in the outset by the parties
that the residue should remain for the growth of the young wood
upon it, and it did so remain to their common profit ; so that it
cannot be said that the plaintiff might or should have taken her
proportion by occupancy of that part of the premises.   The de-
fendant's occupancy was also entire in point of time, extending
through the whole period of the tenancy in common ; thus depriv-
ing the plaintiff of receiving her proportion by occupying her
share of the time.   The facts rebut the presumption that it was
expected that the parties were to equalize their benefits by alter-
nating in the possession.

We think, further, that the fair construction of the report,
taking it all together, is, that from the beginning it was the mu-
tual understanding between the parties, that the defendant should
account to the plaintiff on some just and equitable basis, for the
use of the part of the premises he appropriated to a race-course.
If this is so, it obviates the technical objection to the action on
which the defendant relies.    As the profits, which the auditor
finds the defendant received by admission of persons, teams and
horses upon the ground, could not be ascertained, and as the main
portion of his profits derived from the race-course was by the
increase of business it afforded at his hotel, and therefore, not
capable of definite computation, the auditor took a just and sen-
sible view in arriving at the amount which the defendant ought
to pay for such use, and has come to a conclusion manifestly just,
and which is most in harmony with the original expectation of the
parties.

The case has been thus far treated as if the whole question as to
the liability of the defendant to account was open upon the audi-
tor's report.   Generally in an action of account, the judgment to
account is conclusive of the defendant's liability to account, and
the auditor is to examine the items and report the amount either
party is in arrear.   Therefore, if in this case it is necessary, as
the defendant's counsel claims, that an agreement by the defend-
ant to account should be proved, the judgment to account in this
case would seem to be conclusive against the defendant of the

Hayden, administrator, v. Merrill.

fact of such agreement : but independent of this point, we hold the plaintiff is entitled to recover. We see no error in the allowance of interest. It is objected that the auditor has erred in allowing the whole item of $17.67 against the defendant for wood taken by him from the premises, when he should have allowed but half of it. If that is the value of the whole wood taken by the defendant, there is such error. As no explanation is given to the contrary, one half of that item must be deducted.

Judgment reversed, and judgment for the plaintiff for the amount found due by the auditor, less one half of the aforesaid item of $17.67.