## HODAPP et v HODAPP

Ohio Appeals, 2nd Dist, Montgomery Co

No 1661.   Decided March 5, 1941

C. J. Stoecklein, Dayton, for Defendant-Appellant.

H. P. Williamson, Dayton, for Plaintiffs-Appellees.

### OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from a judgment of the Common Pleas Court in favor of plaintiffs and against defendant in the sum of $845.00 with costs.

Plaintiffs in their amended petition say that they are children and heirs at law of Gustave A. Hodapp, deceased, and that the defendant is the surviving spouse of decedent; that decedent died January 6, 1935, intestate seized of real estate described, which, it is asserted, was the mansion house of said Gustave A. Hodapp; that the plaintiffs and defendant, as heirs at law of decedent, inherited the described premises and were tenants in common and coparceners from January 6, 1935 until December 15, 1938.

It is further alleged that the defendant, as surviving spouse, occupied the mansion house from January 6, 1935 to December 15, 1938, one year of which was as surviving spouse as provided by law; that the remaining period of time of occupancy was without the consent of the plaintiffs; that they were excluded from the use and occupancy of the described premises.

It is asserted that the reasonable value of the mansion house was $100.00 per month and the prayer is for total rental due upon the basis of $100.00 per month from January 6, 1936 to December 15, 1938.

Defendant demurred to this amended petition which demurrer was overruled. Thereafter defendant answered setting up a defense of res judicata in that the plaintiffs in Probate Court, Montgomery County, Ohio, presented and had adjudicated the same issue, as joined in this action, by exceptions to a partial account filed by the administratrix and by an application for her removal as such administratrix.

It is further averred that the judgment of the Probate Court was appealed to the Court of Appeals of this District and is now pending in said court. This appeal is on questions of law and does not suspend the judgment below.

Defendant further avers that Gustave A. Hodapp died intestate, leaving defendant, his widow, and the plaintiffs as his only heirs at law; that he died owning the real estate described in the petition designated as the homestead together with a large amount of other real estate; that decedent at the time of his death was in default upon large mortgages in favor of the Fidelity Building Association of Dayton, Ohio, and others and that said Building Association was threatening foreclosure on all of said mortgages, including the mortgage on the homestead; that within a few days after the death of Gustave A. Hodapp a meeting was held in the homestead property attended by all the plaintiffs and by the defendant and her attorney, C. J. Stoecklein, who had been legal counsel for decedent for several years prior to his death; that

the financial situation with which the Hodapp estate was confronted was stated by Mr. Stoecklein and an itemized account of all the indebtedness of decedent was exhibited; that thereafter other meetings were held in January of 1935; that it was unanimously agreed by and between all the heirs at law, plaintiffs, and the defendant that the defendant was to be appointed administratrix of the estate and that she and her attorney were authorized and directed by the plaintiffs to co-operate to the fullest extent with the Fidelity Building Association and to comply with all requirements of said Association in order to avert the immediate disastrous liquidation of the real estate.

It is further averred that pursuant to the aforesaid agreement she was appointed administratrix upon the application of all of the plaintiffs on January 11, 1935. That thereafter on May 3, 1935, pursuant to said agreement she brought a proceeding to sell real estate to pay debts, which proceeding included the homestead property upon which the court ordered that the defendant, as administratrix, sell the described real estate at private sale to pay the debts of the estate; that thereafter defendant and her counsel pursuant to the said agreement co-operated with the Fidelity Building Association, meeting all their requirements and thereby succeeded in forestalling a sale of said real estate; that the homestead property was appraised at $12,000.00; that the back taxes due and owing on January 6, 1935 were $1334.02; that the total indebtedness to the Fidelity upon the note secured by mortgage upon the homestead was $13,524.21.

She further avers that she remained in the homestead beyond the year allowed by law upon the request and instance of the Fidelity to preserve and protect the property and to show it to prospective purchasers, and under the agreement with plaintiffs, and that the Fidelity. in return for her services. permitted her to live in the mansion house without payment of rent therefor. although, they required her to pay into

the Association all rents and profits from all other income producing properties of said estate.

She further alleges that by virtue of her efforts and negotiations she finally turned the real estate over to the Fidelity Building Association, securing a cancellation of all notes, mortgages and taxes which were debts against the estate, relieving the estate of a total indebtedness of approximately $16,000, which constituted first liens against the property.

She further alleges that at no time did any of the plaintiffs request the right and privilege to reside in the homestead property, denies that she excluded any of them from the property; that at no time, from the death of her decedent until the institution of this suit had plaintiffs objected to her use of the property or requested that she pay any rent or make any return to them for the use of the property.

She denies that she is indebted to the plaintiffs in any sum whatsoever and generally denies each and every allegation of the amended petition not specifically admitted to be true.

The reply is a denial of the answer of res judicata, denial of any agreement between plaintiffs and administratrix of the estate of Gustave A. Hodapp as set out in the answer; denies the authority of the Probate Court to make any findings or conclusions of law in the matter for the reason that the question of the reasonable value for the use and occupancy of the premises was not before the court and that the sole question before the court was the removal of the administratrix and admits that this question was decided by the Probate Court. Denies that the estate of Gustave A. Hodapp was insolvent and generally denies each and every allegation of the answer not specifically admitted.

It will be necessary at the outset to get our legal bearings in the involved situation presented by the issues in this case. Inasmuch as the first defense of the answer is res judicata or estoppel by judgment, we will examine the record to determine if there is a judgment upon which estoppel may be predicated.

In the proceedings heretofore referred to the heirs, plaintiffs in the instant case, had adopted two remedies, first, exceptions to the account of the administratrix and second, an application or motion for her removal as administratrix.

At the outset, it must be conceded that the right of Mrs. Hodapp, individually, or as administratrix, to live in the homestead beyond a year after the death of her decedent was not specifically challenged in the exceptions to her account. However, an examination of the record is convincing that this question was brought into the hearing of the exceptions and made the subject of consideration by the court upon the initiation of the exceptors, (page 29 direct examination of Mr. Williamson, Bill of Exceptions from Probate Court, case No. 78520), and the findings of fact and conclusions of law clearly included the claim that the administratrix improperly failed to account for the rental income for the use of the homestead. It is true that no evidence was offered in the hearing on the exceptions as to the rental value of the homestead property but the right of the administratrix to use it was clearly the subject of interrogation and she was later on in the application to remove also inquired of as to the rental value of the homestead.

We are of opinion that we would do no violence to the rights of the plaintiffs in this case if we were to hold that by common agreement the right of the widow, individually or as administratrix, to occupy the homestead beyond the year after her husband's death was made the subject of the exceptions to the account.

The question under consideration was clearly and explicitly made one of the grounds assigned for the administratrix's removal and the parties, upon issues drawn, submitted this question to the Probate Judge. We know that he held against the applicants on this question as reflected in the special findings of fact and conclusions of law

in the hearing on the exceptions. However, unfortunately, the specific finding on the question under consideration was not carried into the special findings or judgment entry on the application to remove. In any event, the judgment entry does not directly adjudicate the right of the widow to occupy the homestead nor is there anything in it which would permit us to say that a finding for the widow on this question was essential to the judgment.

If the right of the widow to occupy the homestead beyond the year preceding the death of her husband had been carried into the findings of the Probate Judge in the proceedings for the removal of the administratrix, we would be disposed to hold that res judicata or estoppel by judgment was established. Upon the record as we find it, we can not so hold.

The fact that there is insufficient in the judgment entries to support the defense of estoppel by judgment does not preclude a consideration of the germane subject matter of the proceedings in the Probate Court if brought on to the record in the instant case. The testimony taken on the exceptions and upon the application to remove was so inter-related as that it was difficult for the court to separate it although we do find in the record from the Probate Court the statement by the Judge, approved by counsel for the heirs, that the testimony taken on the exceptions might be considered on the application to remove but that the reverse situation would not attend.

The right of the widow to occupy the homestead beyond her alloted period was challenged by the heirs in both proceedings in Probate Court. Upon what theory could the claim of the heirs as to the occupancy of the homestead have been relevant to establish misconduct or maladministration of her estate as administratrix? It was not contended by the heirs that she occupied the homestead as administratrix. This was the claim of Mrs. Hodapp, which the heirs denied. They were then remanded to the claim that Mrs.

Hodapp, as an individual, had occupied the homestead beyond her alloted time. If she had done so as an individual, independent of any agreement that she might do so, or, independent of the rights of third parties, she would be required to pay rent to her co-tenants. This was the basis of the application for removal as set out in the following language:

"That said administratrix as surviving spouse of Gustave A. Hodapp, deceased, lived in the mansion house for a period of two years and eleven months beyond the period allowed by law for the surviving spouse to live in the mansion house." (Emphasis ours).

Thus, it is evident that the heirs invoked the judgment of the Probate Court upon the identical question and based upon the same contention as was set up in the Common Pleas Court and is now urged in this Court in the instant case. In the Probate Court, after raising the issue, no one of the heirs testified to support their claim against the widow respecting her right to occupy the homestead.

So that, in effect, the action which we now consider is the second attempt of the heirs to secure a judgment against the widow upon the same state of facts.

We then consider whether or not the defendant has established her defense upon the merits in this action. The conduct of the plaintiffs with respect to the administration of the estate speaks more eloquently than anything they say respecting the existence and the interpretation of the agreement between themselves and the widow, the administratrix.

At no time from the death of their father until the filing of the proceedings in Probate Court did they manifest any intention of calling upon Mrs. Hodapp to pay rent for the homestead. They did nothing to indicate that they desired to exercise any dominion or control as co-tenants in the property. They made no effort whatever to dispossess the widow or to inform her

that her occupancy of the premises was unsatisfactory or displeasing to them. This in itself is persuasive that they did not mean to require her to pay rent and can best be reconciled upon the theory which the widow has at all times advanced, namely, that her occupancy was by common consent of the heirs and the Fidelity.

It is the specific defense of the widow in this case that pursuant to the conferences between herself, her attorney and the heirs it was agreed that she would be appointed administratrix of the estate and that she and her attorney were authorized and directed by the plaintiffs to co-operate to the fullest extent with the Fidelity Building Association and to comply with all the requirements of the Association in order to avert the immediate disastrous liquidation of the real estate. The situation which confronted the heirs is evident. Mr. Hodapp in his lifetime had conducted extensive real estate operations, was the owner of many properties and they had been mortgaged to the Fidelity in a sum which at that time, no doubt, seemed to be but a part of their value. However, depression had come on before his death and the slump in the market had so depressed the value of the properties that they did not bring the mortgage indebtedness. This was the condition existing at the time of his death. It was hoped that the market would improve and that, if the Fidelity could be held off in its foreclosure proceedings the increase in value of the real estate would enable the heirs to realize something upon their inheritance.

Inasmuch as the Fidelity had a provision in its mortgage that it was to have the rents, issues and profits from the income producing real estate upon which it held mortgages, what would be contemplated in the term, "co-operate with the Fidelity"? To us it seems self-evident that the Fidelity would not permit. if it could prevent, the rents, issues and profits to be diverted to the heirs and it was in pursuance of this arrangement that the net income from the filling stations was turned over to the Fidelity. This was made the subject of specific exceptions to the administratrix's account as to two properties occupied as filling stations, the income from which the administratrix collected and paid to the Fidelity.

Of course, it is probable that there was nothing specific said about the widow living in the homestead after the year to which she was entitled. This is in accord with the testimony of the heirs and it is probable that all of the parties had in mind that something of advantage to the estate might be accomplished within a year or two. But when a year had elapsed the estate was still in process of settlement and the widow within reasonable contemplation of the understanding with the heirs and in co-operating with the Fidelity was permitted by the Fidelity to remain in the homestead. Its officer so testifies and says that the arrangement was satisfactory to it because it enabled the Association to have someone in the property to show it to prospective purchasers.

This arrangement was but the natural consequence of the agreement to which the heirs and the widow were parties. The Probate Court so held and, in our judgment, properly and we believe that in the light of all the circumstances in this record it is the only reasonable conclusion to reach.

Inasmuch as the mortgage claim of the Fidelity was far in excess of the appraised value of the real estate a credit upon the indebtedness to the Fidelity of the reasonable rental value of the homestead would only have resulted in reducing the amount due the Fidelity and would have yielded no return whatever to the heirs.

Upon the question of the right of the tenants in common, unaffected by any claim of third parties, to require a coparcener who has occupied the common estate (residence property) to account for the fair rental value thereof, we would be disposed to hold with the contention of the plaintiffs upon the authority of **West v Weyer, 46 Oh St 66,** and **§12046 GC.**

We now consider the right of the plaintiffs to recover upon the issue drawn by the general denial of the answer to the allegations of their amended petition. It is true as a general proposition of law that though a real estate mortgage contains a pledge of rents, issues and profits and the condition is broken, the mortgagor is entitled to them so long as he retains possession. **Fidelity Mortgage Company v Mahen, 31 Oh Ap 151, Norwood Savings Bank v Romer, 43 Oh Ap 224; 12 Abs 472.** But it has been held that,

"Where the estate of a mortgagor has passed into the exclusive jurisdiction of the probate court, under an assignment for the benefit of creditors, a mortgagee (having the right to rents and profits by express stipulation), being cut off from his right to proceed by the appointment of a receiver auxiliary to a foreclosure suit, has the right to be paid from the fund arising out of the land from the rents or the sale, or both. It makes no difference that the fund was acquired by the process of assignment rather than by the appointment and action of a receiver, for to all intents and purposes in such case, there is no essential difference between the two."

**27 O. Jur. 380, Hutchinson v Straub, 64 Oh St 413.**

In this action it appears that the administratrix filed her petition to sell real estate to pay debts prior to a year after her appointment. The Fidelity was precluded from securing the appointment of a receiver by virtue of the statute which gave the administratrix the prior right to institute her suit.

The exact situation here presented was before the Court in **Wagner v Blanchard, 40 Oh Ap 553; (11 Abs 122, 195)** and the court there held in the three propositions of the syllabus,

"(1) Heirs at law of administrator can have no greater interest in premises than intestate had.

"(2) Where intestate pledged realty and rents therefrom and bound himself, heirs, and executors, lien was impressed upon fund arising from realty, and cannot be changed in status by heirs or administrator.

"(3) Where intestate mortgaged realty and rents and bound himself, heirs, and executors, mortgagee had right to have funds arising from realty applied to extinction of indebtedness as against claims of administrator and heirs at law."

We will not discuss the cited case further but are satisfied to say that we are in agreement with the judgment reached and the reasons therefor.

In **Overturf, Admr. v Dugan, 29 Oh St 230**, cited by appellees, the Court at page 235 of the opinion said that the "lien of the creditors" under which the administrator claimed the right to rents "was upon the land itself, and not upon the rents accrued during the time intervening between the death of the intestate and the sale by the administrator."

In no view of the facts in this case could the plaintiffs have legally maintained their right to the ▮▮▮▮▮▮ rental value of the homestead if it could be held that the tenant was obligated to pay rent.

We have considered the subject matter of the stipulation of counsel for the parties made since the submission of the case. We have also had separate communications from counsel setting forth certain facts and figures, some of which we thought might have been made the subject of stipulation, but as counsel are not in agreement, we have given no consideration whatever to these communications.

Finding and judgment for defendant. Amended petition dismissed at the cost of plaintiffs.

GEIGER, PJ. and BARNES, J., concur.