COHEN, APPELLANT, *v.* COHEN ET AL., APPELLEES.

(No. 7448—Decided June 18, 1951.)

*Mr. Benjamin S. Schwartz,* for appellant.
*Messrs. Gorman, Silverstein & Davis,* for appellees.

MATTHEWS, J.   On June 14, 1925, Joseph Cohen and Lena Wolfson, each previously married and each having five living children, entered into an antenuptial agreement and shortly thereafter were married.   In accordance with the terms of such agreement, Joseph Cohen purchased a residence property on Carplin Place in the city of Cincinnati and transferred an undivided one-half interest therein to his wife, Lena Wolfson Cohen.   Joseph and Lena Wolfson Cohen moved into the residence in 1926 and continued to occupy it as their home until the death of Joseph on August 7, 1941.   On the same day that the antenuptial agreement was entered into, Joseph Cohen executed a will in which he named his children as beneficiaries of his estate, share and share alike.

After Joseph Cohen's death, a dispute arose between Lena Wolfson Cohen and the children of Joseph Cohen as to the validity of the antenuptial agreement

and, if valid, its efficacy to exclude Lena Wolfson Cohen from receiving that portion of the decedent's estate, which, under Section 10509-54, General Code, is not deemed assets of the estate in favor of the surviving spouse. Litigation resulted. The validity of the antenuptial agreement was sustained, and in *Cohen et al., Exrs.,* v. *Cohen,* 82 Ohio App., 260, 80 N. E. (2d), 813, decided on December 15, 1947, it was held that it was a bar to the widow's claim of assets under Section 10509-54, General Code.

In the meantime, an action to partition the residence premises was dismissed.

After Joseph Cohen's death, his widow continued to reside in the Carplin Place home in the same manner as she and her husband had during his lifetime. No part of the premises was rented and there is no evidence of the receipt of any income or profit from the premises, except four dollars per month as rent for a garage for an undetermined period. It is admitted that none of Joseph Cohen's children ever occupied any part of the premises after his death. It is also admitted that no demand was ever made upon the widow to allow the children to occupy the premises or any part thereof. The widow at no time denied them access to the premises. However, it is clear that joint occupancy would not have been congenial.

There was no dispute as to defendants' title to an undivided one-half. The result of the litigation involving the antenuptial agreement might have affected the plaintiff's title, but that furnished no reason for the defendants not asserting their rights to the other undivided one-half of the Carplin Place property.

On February 10, 1948, the defendants notified the plaintiff that they intended to hold her liable for her share of taxes, rent, waste, and insurance.

During all these years one of Joseph Cohen's sons

had paid the taxes and the premiums on the insurance on the premises.

This action for partition was filed by Lena Cohen. A consent decree for partition was entered and the plaintiff became the purchaser at a public sale.

The defendants, the children of Joseph Cohen, by amended cross-petition alleged their ownership of an undivided one-tenth each; that the plaintiff had occupied the premises since her husband's death to the exclusion of the defendants and had refused to vacate; that defendants had notified her that rent would be charged; that the reasonable rental value was $60 per month; that they had paid the taxes and insurance premiums; and that waste had been committed. They prayed for judgment for $5,426.39.

At the trial, the Common Pleas Court found in favor of the defendants as to the taxes and insurance in the sum of $556.93, and on their claim of one-half of the rental value from August 7, 1942, to January 12, 1950, of $50 per month, totaling $2,225. The court found against the defendants on their claim of waste. Judgment was entered in favor of the defendants for $2,781.93.

This appeal is from that judgment. The notice of appeal recited that it was on questions of law and fact, but as the chancery element of the case was disposed of by the conclusion of the partition proceedings, and the judgment appealed from being for money only on a cross-petition that prayed for no other relief, the appeal must be limited to a review on questions of law only. *Gantz* v. *Village of Louisville*, 155 Ohio St., 425. The appeal will be so limited. However, as the action was presented on the record made in the trial court, we shall consider the case as though here on questions of law only, and give leave to have the bill of exceptions approved and filed within thirty days after this decision.

The foregoing recital sets forth the record made in the Common Pleas Court and it is on that record, by the agreement of the parties, that the case is presented to this court.

No contention is made that the defendants are not entitled to recover one-half of the taxes and insurance premiums paid by them. The only issue presented is whether, under the circumstances, they are entitled to recover anything from the plaintiff because she chose to exercise her right of occupancy as a cotenant and they did not. The defendants' claim is based entirely upon compensation for that sort of possession to which any tenant in common has a right, and which is not adverse to the equal rights of the other cotenants and would never bar their title, no matter how long continued.

The defendants assert that they are entitled to relief under the provisions of Section 12046, General Code, which provides as follows:

"One tenant in common, or coparcener, may recover from another his share of rents and profits received by such tenant in common or coparcener from the estate, according to the justice and equity of the case."

The plain meaning of this section is that it refers to the receipt of rents and profits from the joint estate in which others are entitled to share. It would seem that if a cotenant has received nothing to which he is not entitled, then he is under no obligation to his cotenant. It seems clear that the word, "profits," in Section 12046, General Code, was not intended to refer to any enhancement in the value of the common property. It necessarily refers to something other than the corpus or capital. It must refer to income, because there can be no profits unless there is income, and profits means the excess of receipts over expenditures, that is, net income.

In the case of *Eisner, Collector of Internal Revenue,* v. *Macomber,* 252 U. S., 189, 64 L. Ed., 521, 40 S. Ct., 189, 9 A. L. R., 1570, the Supreme Court was called upon to construe the 16th Amendment to the United States Constitution, which authorized Congress to levy, without apportionment, taxes upon "incomes from whatever source derived," and at page 207 said on this subject:

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived, '*Derived—from—capital*';—'the *gain—derived—from—capital,*' etc. Here we have the essential matter: *not* a gain *accruing to* capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in,* being '*derived,*' that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the 16th Amendment—'incomes, *from* whatever *source derived,*'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution."

Did the plaintiff by the mere fact of remaining in possession of these premises and by holding them as a cotenant receive something to which she was not entitled? Did she deprive the defendants of some-

thing by that holding? The answers depend on the rights of cotenants in the common property. What are these rights?

As to these rights, it is said in 14 American Jurisprudence, 93, Section 23:

"It is a rule of general application that any co-owner of real property has a right to enter upon the common estate and take possession of the whole thereof, subject only to the equal right of his companions in interest with whose possession he may not interfere." And, on the following page, we find that "it is a universal principle that the possession of one cotenant is the possession of all."

At common law the cotenant in possession was not obliged to account to the cotenants out of possession "unless his acts amounted to an ouster, or unless he had agreed to become a bailiff for them." 14 American Jurisprudence, 99, Section 31. It was to correct that rule that the Act of 4 Anne. Ch., 16, was enacted. While this statute, as construed by the English courts, required the tenant in possession to account for money received from third persons for the use of the common property, it did not require him to account for profits from operations thereon, or for the value of its use and occupation. 14 American Jurisprudence, 100, Section 33. It is said that a decided majority of the American courts concur in this construction of the Act of Anne and American statutes patterned after it, but that a substantial minority hold that the construction is too narrow, and that the occupying tenant is required to account to the nonoccupying tenant not only for rent collected, but also for profits derived from his operations on the common property. This dissent from the minority relates in most cases only to the holding that the occupying tenant is not bound to account to his cotenant for profits derived from

operations conducted by him on the common property. In most cases wherein this view was expressed, more than mere occupancy was proven against the tenant in possession. And in some such cases the statute under construction was couched in different language.

In the case of *Hayden, Admr.,* v. *Merrill,* 44 Vt., 336, 8 Am. Rep., 372, which was approved by our Supreme Court in *West* v. *Weyer,* 46 Ohio St., 66, 18 N. E., 537, the facts were that the plaintiff and defendant bought one hundred acres of land adjoining a hotel owned and operated by the defendant, and at the time of the purchase it was understood that the defendant would appropriate a part as a racecourse for horses—for training, driving, and trotting horses—thereby increasing the patronage of his hotel. From the finding of the auditor it was implied that the plaintiff was to participate in the profits derived from the use of the land of which she was co-owner. The defendant laid out the racecourse and derived great profit from entrance fees as well as hotel patronage. However, defendant kept no record of the resulting income and the auditor found that he had no means of determining what that profit was, but that had the defendant not appropriated the land for a racecourse it would have produced a net income of 6 per cent on the investment. Judgment was rendered for the plaintiff on that basis. It can be seen from this statement that the defendant's liability was not the result of occupancy alone. Profit was derived from third persons. The income which could have been derived from the premises had not the defendant appropriated it was resorted to as the measure of damage only because the defendant had kept no accounts, and for that reason the auditor was unable, through defendant's fault, to state an account. It was not awarded for use and occupation, but as a measure of the profits that

the defendant had made by his operation of the race-course.

This substituted measure of damage was also resorted to in *Cain* v. *Cain,* 53 S. C., 350 (another case placed in the minority group), and on this subject, at page 352, the court said:

"The evidence as to the rental value of the premises occupied and cultivated, was admitted and considered merely as tending to establish the value of the rents and profits received, in the absence of any definite showing by the administratrix as to the actual receipts. Under such circumstances, the evidence was admissible. If the occupying tenant wishes to limit his accountability to rents and profits actually received, it is his privilege to show what he has received; but if he is unwilling or unable to make such showing, it is competent to show by speculative testimony what he has probably received. Under ordinary conditions, it is probable that a fair rental value of premises will closely approximate the value of rents received in case of a lease to third persons, or the value of the net profits received in case the occupying tenant cultivates the land himself and takes and appropriates the products thereof."

It is true that in *Hayden, Admr.,* v. *Merrill,* 44 Vt., 336, 80 Am. Rep., 322, the court analyzed many cases and reached the conclusion that the liability of the occupying tenant was not limited to rent actually received from third persons, but it is also true that the court gave many illustrations of instances in which the occupant would not be liable to the out-tenant and at page 348 said:

"The fact that in some cases it would not be just to hold the tenant occupying without contract to account to his cotenant, is no reason why he should not be liable in any case. There is no danger of injustice

from such liability where the statute makes the tenant liable only '*for receiving more than his just proportion,*' which is to be determined by the facts in each particular case.''

There are many cases involving this question. It would serve no purpose to consider every case which to a certain extent sheds light on the subject. The particular circumstances governed in most, if not all, the cases.

Appellees' counsel rely on *West* v. *Weyer, supra, Hodapp* v. *Hodapp,* 34 Ohio Law Abs., 305, 37 N. E. (2d), 101, and *Warner* v. *Matthews,* 79 Ohio App., 111, 69 N. E. (2d), 59, to support the construction of Section 12046, General Code, given by the trial court. Let us examine those cases.

In *West* v. *Weyer,* the plaintiff and defendant were tenants in common of a farm containing 146 acres. The defendant owned 400 acres adjoining this farm on three sides. No fence separated these farms. The defendant pastured and fed about 100 head of cattle on the 146 acres of which he was a tenant in common. The action was for partition and for an accounting of the rents and profits. The trial court made findings of fact and conclusions of law. The court found that the fair rental value was $150 per year, and judgment was rendered for the plaintiff on that basis. There was no attempt by the defendant to render an accounting and, of course, no attempt to show that his profit from pasturing was less than the fair rental value of the land. Certainly, the burden rested upon him to do this and upon his failure the court was justified in taking the fair rental value of the land as the measure of his profit.

The facts in *West* v. *Weyer* exclude the idea that the Supreme Court intended to decide that mere occupancy of the common property by one cotenant

renders him liable to the out-tenant for use and occupation. The tenant in possession in that case actually received a profit. Both in the syllabus and in the opinion that fact is set forth.

The case of *Hayden* v. *Merrill, supra,* upon which the court relied was not a case of mere occupancy by one tenant. The tenant in possession in that case carried on a substantial business on the common property. Both *West* v. *Weyer* and *Hayden* v. *Merrill* were decided on the particular facts of the respective cases in accordance with justice and equity, and not upon any undeviating rule of liability of an occupying tenant. The court in *West* v. *Weyer, supra,* said at page 71: "Then we are not at liberty to conclude or say that the words, 'according to the justice and equity of the case,' were added without a purpose." And, at page 73, "His [defendant's] possession of the common estate was rightful." That being so, how can we conclude that the court meant to say that rightful possession alone would create a liability?

In *Hodapp* v. *Hodapp,* 34 Ohio Law Abs., 305, the court found for the defendant, who was the occupying tenant. There were many reasons for so doing. The most that can be said about the *Hodapp case* in favor of the out-tenant is that the court said it "would be *disposed* to hold with the contention of the plaintiffs upon the authority of *West* v. *Weyer,* 46 Ohio St., 66, and Section 12046, G. C." (Emphasis added.)

While *Warner* v. *Matthews, supra,* was an action by out-tenants against a cotenant in possession to recover under the provisions of Section 12046, General Code, the only issue discussed was whether the Municipal Court, exercising the jurisdiction of a justice of the peace, had jurisdiction of such cause of action under the circumstances. There was no bill of exceptions and, therefore, the court was called upon to de-

cide whether the plaintiff had stated a cause of action within the jurisdiction of the court. The court cited and quoted from *Conrad* v. *Conrad,* 38 Ohio St., 467; *West* v. *Weyer, supra*; and *Black, Recr.,* v. *Boyd,* 50 Ohio St., 46, 33 N. E., 207, in reaching a conclusion as to the nature of the cause of action under Section 12046, General Code, which requires the award to be "according to the justice and equity of the case." The court reached the conclusion that Section 12046, General Code, did not restrict the action to one in equity, and that the Municipal Court had jurisdiction of the cause of action stated in the pleadings. Later decisions make it abundantly clear that the court was right in so holding. 1 Ohio Jurisprudence, 201 *et seq.*; *La Bounty* v. *Brumback,* 126 Ohio St., 96, 184 N. E., 5.

*Warner* v. *Matthews, supra,* clearly sheds no light on the issue presented in this case.

A review of all the authorities leads us to the conclusion that mere proof of occupancy, without more, is insufficient to create a liability on the part of the tenant in possession in favor of a cotenant out of possession. If any liability arises, it is the result of attendant circumstances, and the burden of proving the existence of such circumstances rests upon the tenant seeking to fasten liability upon his cotenant.

In the case at bar, the plaintiff was sharing possession of these premises as a cotenant with her husband at the time the defendants acquired their title upon her husband's death. She continued to occupy the premises after his death without any attempt by defendants to share such possession with her, without any refusal on her part to let them do so, and without any notice to her that they expected her to pay rent from August 7, 1941, to February 10, 1948, on which latter date they notified her that they expected her to pay rent from August 7, 1941. There is no evidence

that the plaintiff required the entire premises for her personal use or that she actually occupied the entire premises. During her husband's lifetime and at his death, the plaintiff's son was living with them as a member of the family and after the husband's death the son continued to live at the home for about two years. Another son visited his mother and on one occasion stayed for two days. The only suggestion that she received any rent or profit was her own testimony that a garage on the premises had been rented part of the time at four dollars per month. Those are the circumstances attending the plaintiff's continuance in occupation of these premises after her husband's death.

Do these circumstances show that the plaintiff has received either rents or profits which, according to justice and equity, she should share with the defendants? If so, to what extent?

It seems clear to us that the plaintiff's possession from August 7, 1941, to February 10, 1948, was no more than the possession to which any cotenant is entitled by virtue of his or her title, and that this possession was unaccompanied by any circumstances creating a liability in favor of the other cotenants. It would not be just or equitable to impose upon her a charge for use and occupation based on occupation only.

Did the demand made on February 10, 1948, change this situation? It will be noted that this demand was not that the defendants be permitted to share the possession with the plaintiff. The demand was, in effect, that the plaintiff pay them for the exercise of the possessory right inherent in her title as a co-owner.

We are of the opinion that one co-owner cannot charge the other co-owners for the exercise of that right.

We come now to the question of the rent of the garage. The evidence is vague, but the plaintiff testified that she did rent the garage part of the time and that she received four dollars per month from the tenant while it was rented. The burden of accounting for rent received was on the plaintiff and she failed to do so. Section 12046, General Code, imposed upon her the duty to account for all rents received in accordance with justice and equity. It seems to us that justice and equity require that upon her failure to sustain the burden of accounting for rent received she be charged the reasonable rental value of the garage for the entire period. She has fixed the reasonable rental value at four dollars per month, to which the defendants are entitled to one-half.

We, therefore, charge the plaintiff with rent received from the garage at the rate of four dollars per month, beginning six years prior to the commencement of this action and ending on the date of sale of the premises, of which defendants will receive two dollars per month.

We understand that the alleged error relating to the insurance premiums paid by defendants and charged against the plaintiff has been waived.

For these reasons, after an appeal on questions of law only and the bill of exceptions is duly allowed and filed, the judgment of the Common Pleas Court will be modified by reducing the item for rent in accordance with this opinion and, as modified, will be affirmed.

*Judgment accordingly.*

HILDEBRANT, P. J., MATTHEWS and ROSS, JJ., concur in the syllabus, opinion, and judgment.